**COYLE, Plaintiff, v. UNDERWOOD et, Defendants.**

Probate Court, Franklin County.

No. 127549.  Decided August 9, 1948.

Edward L. Coyle, Columbus, Executor of the Will of Nellie M. Underwood, dec'd.

Dale Rapp, Columbus, for Edward K. Underwood.

Vorys, Sater, Seymour & Pease, Hamilton & Kramer, Columbus, for Charlotte Meier and Arthur W. Meier.

**DECISION ON PETITION FOR DECLARATORY JUDGMENT**

**OPINION**

By McCLELLAND, PJ.

This matter is presented to the Court in the form of a petition for a declaratory judgment relative to the ownership of

certain property passing under the will of James W. Underwood, deceased, which property or the proceeds thereof, is shown in the inventory of the estate of Nellie M. Underwood, deceased, his widow. To the petition an answer was filed by Edward K. Underwood and also a cross petition, in which he alleges that by the terms of the will of his father, James W. Underwood, Nellie M. Underwood, his surviving widow, took only a life estate in said property and that he took the property as remainderman. An answer and cross petition was also filed by Charlotte Meier and Arthur W. Meier who are devisees and legatees under the will of Nellie M. Underwood, deceased, in which cross petition these defendants allege that they are the owners of the property devised under the will of Nellie M. Underwood, and also claim that she took the fee simple title to certain property mentioned in the will of James W. Underwood, deceased. An answer was also filed by Edward K. Underwood to the cross petition of the two defendants hereinbefore named.

On examination of the pleadings three principal questions are raised. First, what was the character and extent of the estate which Nellie M. Underwood took under the will of her deceased husband, James W. Underwood? Did she take a fee simple estate, or did she take a life estate with a power of disposition? If she took a fee simple estate, it will not be necessary to construe any of the items of the will of Nellie M. Underwood. If she took a life estate in said property by the terms of the will of her husband, did she have the right to dispose of same by will? If she did have the right to dispose of same by will, did she exercise that right by the terms of her will which has been admitted to probate in this Court?

James W. Underwood died on March 25, 1944, survived by Nellie M. Underwood, his wife, and Edward K. Underwood, a son by a former marriage. He left a will which was admitted to probate by the Probate Court of Franklin County, Ohio, on May 1, 1944.

The will of James W. Underwood, after directing that his debts and funeral bill be paid, provided as follows:

"Item 11. All my property, that I may die seized or possessed of, both real, personal and mixed, I give, devise and bequeath to my wife, Nellie M. Underwood, to be hers absolutely with full power of disposition, as long as she remains my widow. In the event of her remarriage or death, I give, devise and bequeath to my son, Edward K. Underwood, all my said property, both real, personal and mixed, subject in

the event of remarriage of my said widow, to any legal rights she may have in my estate under the laws of the State of Ohio."

This will was executed on the 13th day of January 1934, ten years prior to the death of the testator.

Nelllie M. Underwood, his widow, and one of the beneficiaries under the will of her husband, died on January 26, 1948, leaving a last will and testament which was admitted to probate by the Probate Court of Franklin County, Ohio, on February 6, 1948. The will of Nellie M. Underwood provides for a number of specific bequests of personal property by Items 1 to XI of said will. Item XII contains the following language:

"All my remaining household goods and furniture, not heretofore bequeathed, now located at 2322 Sherwood Road, Bexley, Ohio, 1 give and bequeath to Charlotte Meier and Arthur W. Meier. In the event said Charlotte Meier and Arthur W. Meier do not accept any of said household goods and furniture, then I give and bequeath said household goods and furniture to Edward K. Underwood."

Item XIII of said will provides as follows:

"1 give and bequeath to Fred W. Drayer of Bexley, Ohio, the sum of Five-Hundred ($500.00) Dollars in cash. to be paid out of my savings account in the Allemania Savings Company, East Main Street, Columbus, Ohio. This savings account is my own money and is not a part of my deceased husband's estate."

Item XIV reads as follows:

"1 give and bequeath to Edith Drayer of Bexley, Ohio, the sum of Five Hundred ($500.00) dollars in cash, to be paid out of my savings account in the Allemania Savings Company, East Main Street, Columbus, Ohio. This savings account is my own money and is not a part of my deceased husband's estate. This bequest and the bequest to Fred W. Drayer are in recognition of the services performed by said beneficiaries and of the close friendship existing between the testator and Mr. and Mrs. Drayer."

Item XV contains the following language:

"All the remainder and residue of my estate, of every nature, description and kind, wherever the same may be situated or

located, whether real, personal or mixed, after the above bequests, 1 give, devise and bequeath to Charlotte Meier of Columbus, Ohio, absolutely and in fee simple."

James W. Underwood at the time of his death was the owner of an undivided one-half interest in a parcel of real estate situated in the Village of Bexley, which was the homestead of Mr. Underwood and his wife. Nellie M. Underwood was the owner of the other undivided one-half of said property. An inventory was filed by Nellie M. Underwood, the Executrix of the will of her husband, which inventory discloses that there was in the estate of James W. Underwood one Porto Rico Bond in the face amount of $1,000.00, another Porto Rico Bond in the face amount of $1,000.00, one Territory of Hawaii Bond in the face amount of $1,000.00, another Territory of Hawaii Bond of the face value of $1,000.00, a Land Trust Certificate evidencing 2/1850ths interest in the C. A. and C. building Site at Cleveland, Ohio, at a value of $840.00, certificate of stock of the Cleveland & Pittsburgh Railroad, of the value of $2312.50, another certificate of stock of the Cleveland & Pittsburgh Railroad, of the value of $2312.50, a checking account in the Gay-High Branch of The Ohio National Bank in the amount of $6,493.43, and a checking account in the Bexley Branch of The Ohio National Bank in the amount of $10,565.51. The undivided one-half interest in the real estate hereinbefore mentioned was inventoried at a value of $5,000.00. The household goods were inventoried at $300.00 and a five passenger Packard Sedan was inventoried at $500.00. This property was all transferred to Nellie M. Underwood on the assumption that she took a fee simple estate in said property under the will of her deceased husband. Some of the property was sold during her lifetime and converted into other forms of investment. Schedule E of the inventory disclosing the interest in the real estate recites that the decedent, Nellie M. Underwood, was the owner of an undivided one-half interest in Lot 33 of Bexley Park Addition, which was the home property hereinbefore referred to. This inventory also discloses a savings account in the Allemania Savings Company in the amount of $1,000.00. The inventory also discloses the existence of a checking account in the Bexley Branch of The Ohio National Bank in the amount of $10,657.25.

An agreed statement of fact was submitted which contains the statements hereinbefore set out, together with many other statements which are not necessary to state in particularity in this decision.

It is the claim of the answering defendants, Edith Drayer and Fred W. Drayer, that by virtue of the two wills above mentioned, they are the owners of the real estate described in the petition, that Charlotte Meier is the sole owner of the stock certificates mentioned in the will of Nellie M. Underwood, that she is the owner of the money evidenced by the checking account in the Bexley Branch of The Ohio National Bank in the sum of $10,657.25, and that she is the sole owner of the household furniture and effects described in Item III of the plaintiff's petition, and that she is the owner of all the remainder of the personal property not specifically disposed of by the will of Nellie M. Underwood.

It is quite obvious that the first question which this Court will have to decide is the character and extent of the estate which Nellie M. Underwood took under the will of her deceased husband. We will again allude to the will of James W. Underwood, and especially the language of Item II thereof, which reads as follows:

"All my property, that I may die seized or possessed of, both real, personal and mixed, I give, devise and bequeath to my wife, Nellie M. Underwood, to be hers absolutely with full power of disposition, as long as she remains my widow. In the event of her remarriage or death, I give, devise and bequeath to my son, Edward K. Underwood, all my said property both real, personal and mixed, subject in the event of remarriage of my said widow, to any legal rights she may have in my estate under the laws of the State of Ohio."

It is the contention of Edward K. Underwood that Nellie M. Underwood by said language, took only a life estate in the property and that he took the remainder. It is the contention of the devisees and legatees under the will of Nellie M. Underwood that she took a fee simple estate under the will of her husband.

The polar star in the construction of a will is to ascertain the intention of the testator. The Court should put itself, if possible, in the position of the testator at the time he wrote his will to consider all the pertinent facts presented to the Court pertaining to his family and other matters which may reflect upon his intention. Counsel for all of the parties have presented able and exhaustive briefs in support of their respective contentions, but this Court is compelled to say, as other courts have frequently said, that there are no two wills exactly alike, and when a Court reads the decisions of the courts of the various states con-

struing various wills we are compelled to come back to the will being construed, read it from its four corners, and then try to ascertain the intention of the testator.

The will of Mr. Underwood contains what is apparently two inconsistent devises, one of which is apparently repugnant to the other, but upon reading the item carefully, the Court is forced to come to the conclusion that one part of this item is just as clear and definite as the other part. In the early part of the item he gives, devises and bequeaths to his wife, to be hers absolutely, with full power of disposition, all of his property, but only so long as she remains his widow. In the latter part of the item he, in just as clear and concise language, leaves the remainder at the death or remarriage of his wife, to his son, Edward K. Underwood. On the face of the will he apparently gives a fee to his wife, and then also gives a fee in the same property to his son. This is impossible. If one gives his entire estate to one person by his will, he cannot give the same thing by a subsequent language. But we must consider the entire will, not only a part of it. The rule which should be followed in a case of this kind is well stated in Volume 33 of American Jurisprudence, page 477, Section 15, reading as follows:

"The rule which now prevails is that a devise which otherwise would be of a fee may be restricted by subsequent expressions in the will and reduced or cut down to a life estate, provided the reducing words or expressions conform to the requirements of the law in respect of clarity of meaning and testamentary intent. The principle is generally stated in the formula of clarity and from a negative standpoint, since many of the cases refuse to allow reduction of the fee devised. The underlying theory is that if an estate in fee is devised in one clause of a will in clear and decisive terms, it cannot be cut down or taken away by raising a mere doubt in some subsequent clause or by some other inference therefrom: to give such effect, the words of the subsequent clause must be as clear and decisive as are the words of the clause giving the estate in fee. It must be reasonably certain that reduction of the devise was the testator's intention. Thus, while an express gift in fee will not be reduced to a life estate by mere implication from a subsequent gift over, this may be done by subsequent language clearly indicating such intent and equivalent to a positive provision. The authorities recognize a clearer indication of an intent to cut down a larger estate to a life estate where the remainder which would thus

be created would pass to a person in the testator's line of descent than where such remainder would pass to a stranger, because the testator would have a stronger motive to prefer the former class than the latter."

It is to be noted that Nellie M. Underwood was the second wife of James W. Underwood, the testator, and that Edward K. Underwood is a son by a former marriage. The same principle is stated in **41 O. Jur., page 738, at Section 624:**

"A fee simple estate granted in one clause of a will may be restricted to a lesser estate by subsequent provisions thereof, but an express bequest or devise cannot be cut down by a subsequent clause of doubtful meaning. Therefore, a fee simple estate granted in plain and unequivocal language in one clause of a will cannot be lessened or cut down by a subsequent clause unless the language therein is as clear, plain and unequivocal as that in the first grant. Thus, an express and positive devise cannot be controlled by the reason assigned, or by subsequent ambiguous words, or by inference and argument from other parts of the will, or by implication, or by a subsequent clause expressing a wish, desire, or direction for its disposition after the death of the devisee, or by a construction of a subsequent clause which would make the word 'heirs' read 'children.' "

The foregoing quotations contain a statement of the rule as deduced from the various court decisions referred to in the citations from which the quotation is taken. In considering the application of the rule to the case at bar, we must conclude that the subsequent language is just as clear and unequivocal as the preceding language which seems to create a fee simple estate in the widow. It is to be noted by the will of James W. Underwood that he devises "all of my said property, both real, personal and mixed, to my son Edward K. Underwood." He refers, of course, to all the property of which he may die possessed, both real, personal and mixed." We must also take into consideration the fact that Edward K. Underwood was not a stranger to the testator. He was the son of the testator by a previous marriage, and under the rule as hereinbefore announced, that is a circumstance of great weight in inducing the Court to believe that Mr. Underwood wished to give his wife merely a life estate and not a fee, but that the fee should go to his son. The quotation hereinbefore made from **41 O. Jur.** contains citations of many Ohio cases supporting the contention of Edward K. Underwood. The first is that of **Baxter v. Bowyer,** reported in **19 Oh St,** at page **490.** In that case the testator

used language which standing by itself would create a fee simple estate, but is followed by other language which is just as clear and explicit as the language above referred to. The Court held that the wife took only a life estate with the power of sale for the purposes mentioned in the will.

Another case relied upon by Edward K. Underwood is that of **Johnson v. Johnson, 51 Oh St,** at page 446. In that case the testator devised to his wife all of the remainder of his property after the payment of his debts, with full power to sell the same, and then provided that if any of the property remained unconsumed at the time of her death it should be equally divided between his brothers and sisters. The Court in that case held that the wife took only a life estate.

Another case relied upon by Mr. Underwood is the case of **Moeller v. Poland,** reported in **80 Oh St,** page 418. At page 434 the Judge writing that opinion, uses the following language:

"It was the judgment of both the common pleas and circuit courts that while item five of the will, if it stood alone, would vest absolute title to the whole personal estate in Mary L., after payment of the previous bequests, yet considered in connection with item six, and considering the entire will, taken up by its four corners, to use a common phrase, an intention on the part of the testator is manifest to give to his sister a life estate in the real estate and the use of the personal property for life, with a remainder of the whole estate, personal as well as real, to Archbishop Elder and his successor in trust, for the St. Joseph's Orphan Asylum. With this conclusion we agree."

In the case of **Fetter v. Rettig, 98 Oh St, page 428,** we find that the testator devised to his wife as long as she remained his widow, his entire property, both real and personal. He also gave his wife the power to sell the property and to execute deeds and convey a fee simple estate to the purchaser. The Court in that case held that the widow took a life estate only with power of sale.

Another case which has been under discussion by all the parties in this matter is that of **Home v. Lippardt,** reported in **70 Oh St,** at page 261. Upon examination of that decision the Court finds that the issue was whether or not the widow could or did convey a good title to the property under what appeared to be a power of sale. The Court held that she took a life estate with a power of sale and that she could convey a fee simple estate. The Court does, however, discuss many other phases of the will which are to a certain extent

of assistance in the determination of the question now before the Court.

The last mentioned case is relied upon by the devisees or legatees under the will of Nellie M. Underwood, and upon first glance seems to support their contention that Nellie M. Underwood took a fee simple estate under the will of her deceased husband. There is a great similariity between that case and the case at bar; yet, there is some dissimilarity also. In that case the testator gave to the apparent remaindermen what was left after the wife had exercised her right to sell a portion or all of the corpus. In the case at bar Mr. Underwood first devises and bequeaths his property to his wife. Then, in just as clear and unequivocal language, he devises the same property to his son.

The Court has examined most carefully the briefs filed on behalf of the devisees and legatees of Nellie M. Underwood, but finds that many of the cases upon which reliance has been placed by them are cases of inferior courts. Some of the citations of the Superior Courts seem to support their contention, but in the consideration of this case the Court finds consolation in the statement of the Editor of the title "Life Estates, Remainders, Etc.", reported in 33 American Jurisprudence at page 483, Section 20, where he uses the following language:

"In the ascertainment of the question whether a life estate of a fee simple is created by a gift with a power of disposal annexed, a detailed examination of the authorities discloses that in a few jurisdictions there are some cases which are apparently in conflict. This, however, is not due to any real inconsistency among the decisions of such jurisdictions, but to the well known characteristic of will cases (which comprise the great bulk of the litigation on this subject), namely, that each case is a law unto itself and is decided so as to give effect, if possible, to the testator's intention as disclosed by the various provisions and expressions of the instrument and the circumstances of the parties. The basic reason for the diversity of result encountered in cases of this type has been well stated to be that 'seldom, if ever, will two wills be found the exact counterpart of each other, either in language or circumstances. We may look to cases for general rules as guides, but after all, each must be decided upon the language used by the testator, and upon his intention, to be gathered from the whole instrument.'

"The only generalization which may safely be drawn from the cases which applies to all instances where it is necessary to ascertain whether a life estate or a fee has been created

by a gift with a power of disposal is that it is always the purpose and duty of the courts in each case to ascertain the intention of the grantor or testator from the language employed by him as indicating the character of the estate created. These rules are in strict accord with the cardinal principles of construction of wills and deeds."

Now going back to the will. As we have heretofore stated, Mr. Underwood gave what is apparently a fee simple estate to his wife. He gave in just as clear and unequivocal language a fee to his son after the death of his wife. He cannot give a fee and then give the same fee again. We must reconcile the two apparently repugnant provisions of his will and the only reasonable reconciliation to which this Court can come is that Mr. Underwood wished his wife to have the full use and enjoyment of his property during her lifetime or until she should remarry and at her death or remarriage the property should then go to his son.

We therefore are impelled to hold that under the will of Mr. Underwood, his widow took a life estate and his son, Edward K. Underwood, took the remainder.

The next phase of the will which this court is called upon to consider is the phrase "with full power of disposition". In considering this language the Court is confronted with a great volume of court decisions construing like or similar language. There is no question but that Mrs. Underwood had a right to dispose of the property during her lifetime. It is to be noted that the testator does not specifically give her the right to consume the property. He does say that she shall have it absolutely with full power of disposition; yet, in the same item of his will he devises "all my said property, both real, personal and mixed". If he devises all of his said property, he certainly means the identical property which has been disposed of by him under the preceding language in the same item of his will. In the case of **Johnson v. Johnson,** reported in **51 Oh St,** at page **446,** the widow, who is the main devisee, was given the property with full power to dispose of same as she might think proper, and that at the time of her death if any remained undisposed of, it would go the testator's brothers and sisters and their children. The Court held that her right to consume was limited by her discretion as to what she might think proper, and the court held that the widow took only a life estate with power to sell and dispose of same for her personal consumption during her lifetime and if any remained she held it as a trustee for the remaindermen under her husband's will. It

is apparent upon reading Mr. Underwood's will that he intended his wife to have the full right to dispose of the property, and, without doubt, he intended that she might use such a portion of it as was necessary for her support. This construction may seem to the interested parties that the Court is attempting to make a will for Mr. Underwood. The Court, of course, will refrain from going that far, but the Court must put itself in the position of the testator and ascertain from the language used in the will and the circumstances surrounding the testator at the time the same was made in order to ascertain his intention. He undoubtedly gave his wife the power to dispose of the property, but he did not specifically give her the right to consume it. But judging from the relationship, the size of the estate, and the character of his property, it is only reasonable to assume that she had the right to consume such a part as in her discretion was necessary for her support. If she consumed it, no part of that which was consumed would remain, and we are therefore compelled also to hold that she had a power of sale and, if necessary, to convey a fee simple title to the portion which she might have sold, and that out of the proceeds of property sold she would within her reasonable discretion have a right to consume any portion of same and such portion as was not consumed she would hold as a trustee for the person who was entitled to the remainder.

The only question left undecided is whether or not she had a power to dispose of the same by will. This question has not given the court the difficulty the former two questions have given it. The language of the testator, in the mind of this Court, answers that question very definitely. Mr. Underwood, in clear and unequivocal language, provides that in the event of the remarriage or death of his wife, Edward K. Underwood is given all of said property, both real, personal and mixed. We have heretofore held that this language must be given effect in determining whether the widow had a fee simple or a life estate. We must also consider it in determining whether or not Mrs. Underwood had a right to dispose of same by her will. If she would have a right to dispose of same by will, that would nullify the language above quoted. He cannot give it to his son and then provide that his wife may dispose of it by her will. In our opinion, there is no serious ambiguity in that respect and the Court is compelled to hold that although she had a life estate with power of disposition, she did not have a right to dispose of same by her will.

An order may be drawn accordingly.