**KIESTER, III, Plaintiff, v. KIESTER, Admrx., et, Defendants.**

Common Pleas Court, Montgomery County.

No. 111245.   Decided June 12, 1957.

454

Carson & Carson, for plaintiff.

## OPINION

By MILLS, J.

This cause came on to be heard upon the petition for the construction of the last will and testament and codicil of Benjamin F. Kiester, Sr., deceased, a former resident of the City of Dayton, County of Montgomery and State of Ohio, who died August 21st, 1922, leaving surviving

him his widow, Lula Kiester, and one son, Benjamin Franklin Kieste[r] hereinafter referred to as Benjamin F. Kiester, II, who was born on [or] about April 30th, 1900, and was twenty two years of age at the time [of] the death of his father, the testator. At the time of his father's deat[h] Benjamin F. Kiester, II, was married and living with his wife, Geraldin[e] Conklin Kiester, in the home of his father and mother at 402 Sale[m] Avenue, Dayton, Ohio.

The following is a copy of the petition filed herein:

"Now comes the plaintiff and represents that on the 21st day [of] August, 1922, one B. F. Kiester died leaving a will and codicil which wer[e] duly admitted to probate by the Probate Court of Montgomery Count[y] Ohio, on the 29th day of August 1922; letters testamentary were issue[d] to Benjamin F. Kiester, Jr. on the 15th day of September, 1922; tha[t] Benjamin F. Kiester, Jr. died on the 19th day of August, 1955, and tha[t] letters of administration de bonis non with will annexed were issue[d] to Lula Kiester under the reopened estate of B. F. Kiester, deceased, o[n] the 30th day of April, 1956, by said Probate Court, and administratio[n] proceedings were had under the original estate proceedings of the sai[d] B. F. Kiester, deceased, and that administration proceedings are pendin[g] under said reopened estate, all of which will more fully appear fro[m] an examination of the records of the Clerk of Probate Court, Mont[-] gomery County, Ohio.

"The plaintiff is interested in said estate by reason of being a grand[-] son, and one of the lineal descendants of B. F. Kiester, deceased;

"That a copy of the last will and testament and codicil, marke[d] 'Exhibit A' is attached hereto and made a part hereof;

"That on the 1st day of May, 1956, the plaintiff requested said ad[-] ministratrix d. b. n., w. w. a. in writing to bring this suit, and more tha[n] thirty days have elapsed since said request, but said administratri[x] d. b. n., w. w. a. has failed to bring such suit;

"That the following defendant is a legatee and devisee named in sai[d] last will and testament;

"Lula F. Kiester, 402 Salem Avenue, Dayton 7, Ohio;

"That the following defendants claim to have an interest in hi[s] estate:

"Lula Kiester, 402 Salem Avenue, Dayton 7, Ohio; and Carolyn Jea[n] Kutz, 21311 Lopez Street, Woodland Hills, California.

"Plaintiff says that Benjamin F. Kiester, Jr. died on August 1[9] 1955, leaving two children as his bodily issue, both adults, namely[,] Benjamin F. Kiester, III, the plaintiff herein, and his sister, Caroly[n] Jean Kutz, one of the defendants herein, and said two children bein[g] the grandchildren and lineal heirs of B. F. Kiester, deceased; and hi[s] mother, Lula Kiester, being the surviving spouse of B. F. Kiester, de[-] ceased, and the grandmother of said Benjamin F. Kiester, III an[d] Carolyn Jean Kutz.

"The plaintiff is in doubt as to the true construction of the said las[t] will and testament and codicil of B. F. Kiester, deceased, in the follow[-] ing particulars:

"1. What type of estate or interest did the said Lula Kiester receiv[e] in the real estate located at 402 Salem Avenue in the City of Dayto[n]

hio, as set forth in Item I of the codicil to the last will and testament f B. F. Kiester, Sr.?

"2. Would the provisions of Item II, paragraph 2, of the last will nd testament of B. F. Kiester, Sr. be applicable and extend to the roperty located at 402 Salem Avenue, Dayton, Ohio, as described in tem I of the codicil to the last will and testament of B. F. Kiester, Sr.?

"3. What interests or estate did Lula Kiester receive from B. F. Kiester, Sr. at his death, by virtue of the last will and testament and odicil thereto of said B. F. Kiester, Sr., other than in the premises ocated at 402 Salem Avenue, Dayton, Ohio, she not having remarried?

"4. What interests or estate other than in the premises located at 02 Salem Avenue, Dayton, Ohio, did Lula Kiester receive from B. F. Kiester, Sr., by virtue of the last will and testament and codicil of said B. F. Kiester, Sr., since she survived said B. F. Kiester, Sr.'s only son, Benjamin F. Kiester, Jr., he having died in 1955, and she not having remarried?

"5. What interest did Benjamin F. Kiester, Jr., only son of the testator, B. F. Kiester, Sr., receive in the real estate and personal property owned by B. F. Kiester, Sr., at the time of said B. F. Kiester, Sr.'s death, by virtue of the provisions of Item III and Item V of the last will and testament of said testator, and Item I and Item II of the codicil of said testator?

"6. Since Lula Kiester has survived her only son, who died August 19th, 1955, and since Lula Kiester has never remarried, and since Benjamin F. Kiester III and Carolyn Jean Kutz have also survived their father, Benjamin F. Kiester, Jr., and are the only issue of his body, what interest does Benjamin F. Kiester III and Carolyn Jean Kutz receive in the property at 402 Salem Avenue, Dayton, Ohio, all as provided in the last will and testament of B. F. Kiester, Sr., together with the codicil?

"7. Since Lula Kiester has survived her only son, who died August 19th, 1955, and since Lula Kiester has never remarried, and since Benjamin F. Kiester III and Carolyn Jean Kutz has also survived their father, Benjamin F. Kiester, Jr., and are the only issue of his body, what interest or estate does Benjamin F. Kiester III and Carolyn Jean Kutz receive in the property and estate of the testator, other than the property located at 402 Salem Avenue, all as provided in the last will and testament of B. F. Kiester, Sr., together with the codicil?

"8. What is the true meaning and intention of the testator, B. F. Kiester, Sr., as determined from reading together the terms of the last will and testament of testator, and the terms of the codicil of the testator?

"Plaintiff therefore prays the judgment and direction of the court in regard to the true intention and meaning of the clauses in the will of said testator, B. F. Kiester, Sr., deceased, and of the codicil thereto made by said testator, B. F. Kiester, Sr., deceased."

To this petition Lula Kiester, the widow, now ninety two years of age, individually, and as administratrix de bonis non with the will annexed of the Estate of Benjamin F. Kiester, Sr., deceased, and Carolyn Jean Kutz, the granddaughter of Lula Kiester and Benjamin F. Kiester, Sr., the testator, filed the following waiver of summons and answer:

458

"We, the undersigned parties defendant, to the petition in the above indicated action, do each of us hereby waive the issuing and service of summons and voluntarily enter our appearance as such defendants and consent to plaintiff's petition for construction of said will."

Therefore, it appears that all necessary parties to this action have been served with summons or have waived service of summons and filed their answer and consent to the petition for the construction of the last will and testament of Benjamin F. Kiester, Sr., together with the codicil.

It appears from the testimony that Benjamin F. Kiester, II, the only son and issue of Benjamin F. Kiester, Sr., the testator, died on the 19th day of August, 1955, leaving surviving him his daughter, Carolyn Jean Kutz, born October 4th, 1928, and his son, the plaintiff herein, Benjamin F. Kiester, III, born November 18, 1921, both of whom now live in California. It therefore appears that when the testator executed the codicil to his last will and testament, that Benjamin F. Kiester, III, plaintiff in this case, had been born to Benjamin F. Kiester, II.

It appears that Benjamin F. Kiester, II, who died on August 19, 1955, was divorced from his first wife and that he had married said first wife, Geraldine Conklin Kiester, prior to his father's death.

It further appears that said son, Benjamin F. Kiester, II, divorced said first wife, Geraldine Conklin Kiester, some time after 1928, and after his father's death. It also appears that said son, Benjamin F. Kiester, II, remarried several more times subsequent to his first marriage, but never had any children or issue by any of the subsequent marriages up to the time of his death.

It further appears that the only children or issue of the son, Benjamin F. Kiester, II, were born from the union of his first marriage with Geraldine Conklin Kiester, and said only children or issue are Benjamin F. Kiester, III, the plaintiff herein, and his sister, Carolyn Jean Kutz, one of the defendants herein, and that both of said children were born to said son, Benjamin F. Kiester, II, and his first wife, Geraldine Conklin Kiester.

The last will and testament and codicil of Benjamin F. Kiester, Sr., are annexed to the petition and introduced into evidence, and do read as follows:

### "Last Will and Testament

"I, B. F. Kiester, of Dayton, Ohio, being of sound mind and memory, do make, publish and declare this my last will and testament, hereby revoking any and all former wills by me at any time made.

"Item I: It is my will that after my death all my just debts be paid out of my estate.

"Item II: I hereby will, devise and bequeath to my beloved wife, Lula Kiester, the undivided one-half of all my real estate that I may own at the time of my decease so long as she remains my widow. And also give and bequeath to my said wife, one-half of all the personal property that may be left of my estate after the payment of my just debts and the legacies hereinafter mentioned in this will, so long as she remains my widow.

"If by reason of sickness, misfortune or any emergency that may

arise, said provision for my said wife shall be insufficient to keep and maintain her in the station and manner that she lived during my lifetime, then and in that event, it is my will that she be and she is hereby authorized to use such part or parts of the principal of the estate so devised to her as may be necessary for her keep and maintenance in the manner herein provided.

"Item III: I give, devise and bequeatth to my son, Benjamin F. Kiester, Jr., the undivided one-half of all my real estate that I may own at the time of my death, and also one-half of all the personal property that may be left after the payment of my just debts and after the payment of the legacies hereinafter mentioned in this my will. And after the death of my said wife, it is my will that my said son shall have the whole of my estate, both real and personal, absolutely.

"In the event of the death of my son, Benjamin F. Kiester, Jr., during the widowhood of my said wife, Lula Kiester, then, and in that event, it is my will that my said wife shall have and enjoy the proceeds of one-half of my estate devised to my said son by my said last will and testament so long as she remains my widow.

"Item IV: In the event of the marriage of my said wife, then it is my will that she shall have of my estate such part thereof as would go to her under and by virtue of the provisions of the laws of the State of Ohio, and that the rest and residue of my estate then pass and go to my said son, Benjamin F. Kiester, Jr.

"Item V: If my said son die, leaving no issue of his body, and before the death of my said widow, then upon the death or marriage of my said widow, it is my will that two thirds (2/3) of my estate, real and personal, shall go and pass to my brothers and sister, Susan E. Norris, or their legal representatives, share and share alike, and one-third (1/3) thereof shall go and pass to the three (3) sisters of my said wife, if they be living, viz: Alice Heikes, Jeanette Heikes and Nellie B. Thorne, share and share alike.

"Item VI: It is my will and I hereby devise and bequeath to my two nieces, Edith Mumma and Forest Kuhns, daughters of my brother, William H. Kiester, each the sum of One Hundred Dollars ($100.00).

"Item VII: I hereby devise and bequeath to Alice Heikes, sister of my said wife, the sum of One Hundred Dollars ($100.00); and to Jeanette Heikes, sister of my said wife, the sum of One Hundred Dollars ($100.00); and to Nellie B. Thorne, sister of my said wife, the sum of One Hundred Dollars ($100.00); and to my nephew and niece, W. L. Norris and Grace Renneburg, son and daughter of my sister, Susan E. Norris, each the sum of One Hundred Dollars ($100.00).

"Item VIII: It is further my will that each and all of said legacies above provided for to my nieces and to the sisters of my said wife, and to my nephew, W. L. Norris, shall be paid only out of the personal property that may be left of my estate after the payment of all my just debts and the costs of administration, and that no part of said legacies shall be paid out of my real estate, and in the event that there is not sufficient personal property of my estate after the payment of my just debts and the costs of administration, then and in that event the per-

sonal property so left shall be applied in payment of the special legacies, pro rata.

"Item IX: I hereby appoint my said wife, Lula Kiester, to be the testamentary guardian of my said son, Benjamin F. Kiester, Jr., during his minority.

"Item X: If, at the time of my death, my said son shall not yet be twenty one (21) years of age, then it is my will that my brother, John Kiester, and William T. Thorne, be appointed as executors of this my last will and testament, without bond or appraisement; but in the event that my said son is twenty one (21) years of age, then it is my will that my said son, Benjamin F. Kiester, Jr., shall be the executor of this my last will and testament instead of John Kiester and William T. Thorne, also to act without bond or appraisement.

"In Witness Whereof, I have hereunto subscribed my name and affixed my seal this 20th day of November, in the year of our Lord one thousand nine hundred and nineteen.

/s/ B. F. Kiester

"Signed, published and declared by the above named B. F. Kiester as and for his last will and testament, in the presence of us, who in his presence, at his request, and in the presence of each other have hereunto subscribed our names as witnesses.

/s/ Allen C. McDonald<br>/s/ Julia Anna Keever"

### CODICIL TO LAST WILL AND TESTAMENT

"I, B. F. Kiester, whose full name is Benjamin F. Kiester, of Dayton, Ohio, being of sound and disposing mind and memory, do make, publish and declare this codicil to my last will and testament executed by me under date of November 20th, 1919.

"Item I: I give, devise and bequeath to my beloved wife, Lula Kiester, the real estate where we now reside, located at No. 402 Salem Avenue, in the City of Dayton, Ohio, and being ten feet taken by parallel lines off of the north-west side of lot numbered twenty-one thousand six hundred and twenty (21,620) and forty three feet or thereabouts taken by parallel lines off of the southeast side of lot numbered twenty one thousand six hundred and nineteen (21,619) both of the consecutive numbers of lots on the revised plat of the City of Dayton, Ohio, to be used and enjoyed by my said wife during the period of her natural life. It is my intention that this provision shall embrace the property and premises where we live and that my said wife shall have the use and enjoyment thereof and income therefrom while she shall live. Item II of my said last will and testament is hereby changed and modified in accordance with this provision.

"Item II: Upon the death of my said wife said tract of real estate embraced in Item I hereof shall pass to my son, Benjamin F. Kiester, Jr., or in the event of his previous death, to the issue of his body, or in the event he shall die without such issue then to my brother and sister or their legal representatives, as I have set out and provided for in Items III, IV and V of said last will and testament; in other words, said real estate so given to my said wife during her lifetime shall, upon her death,

be subject to the same provisions of said original last will and testament he same as though the life estate had not been created.

"Item III: Said last will and testament is, in all other respects, hereby ratified and confirmed.

"In witness whereof I have hereunto subscribed my name this 4th day of January, in the year of our Lord one thousand nine hundred and twenty two.

/s/ B. F. Kiester

"Signed, published and declared by the above-named B. F. Kiester as and for a codicil to his last will and testament, in the presence of us, who in his presence, at his request, and in the presence of each other have hereunto subscribed our names as witnesses.

/s/ Julia Ann Keever
/s/ Allen C. McDonald"

The court finds from the testimony that the testator left four parcels of real estate in the City of Dayton, Ohio, a farm in Darke County, Ohio, near Greenville, and about one thousand acres of land in Saskatchewan Province, Canada.

The court finds that Benjamin F. Kiester, II, deceased, was twenty two years of age at the time of the death of his father, and was appointed executor as provided in the will; that the estate was administered in the Probate Court of Montgomery County, Ohio, and after the death of Benjamin F. Kiester, II, on August 19, 1955, letters of administration de bonis non, with the will annexed, were issued to Lula Kiester, the widow of the testator, under the reopened estate of Benjamin F. Kiester, deceased, on April 30, 1956, by the Probate Court of Montgomery County, Ohio, and that administration proceedings are pending under said reopened estate of testator, all of which will be shown more fully from an examination of the records of the Clerk of Probate Court of Montgomery County, Ohio.

The court further finds that Lula Kiester is still the widow of Benjamin F. Kiester, Sr., the testator, is now living, that she is ninety two years of age, and that she has never remarried since the death of testator.

The court further finds from the testimony that Benjamin F. Kiester, II, died August 19th, 1955, leaving two children as the only issue of his body, being Benjamin F. Kiester, III, the plaintiff herein, and Carolyn Jean Kutz, one of the defendants herein; that said two children are the only grandchildren and lineal heirs of Benjamin F. Kiester, Sr., the testator. That Lula Kiester, being the surviving spouse of Benjamin F. Kiester, Sr., deceased, is the grandmother of Benjamin F. Kiester, III, and Carolyn Jean Kutz.

Plaintiff in his petition says that he is in doubt as to the true construction of the last will and testament and codicil of Benjamin F. Kiester, Sr., deceased, in the following particulars:

Question 1—

"What type of estate or interest did the said Lula Kiester receive in the real estate located at 402 Salem Avenue in the City of Dayton, Ohio, as set forth in Item I of the codicil to the last will and testament of B. F. Kiester, Sr.?"

Answer—

The court finds that Lula Kiester takes a conventional or base life estate in the whole of the property at 402 Salem Avenue, described in Item I of the codicil of testator's will.

The language of Item I of the codicil is absolutely clear that testator's widow is to receive a life estate only, without earlier termination, and without additional attributes or powers. This language is so rudimentary that further elaboration by this court seems unnecessary.

The ninth line and thereafter of Item I of the codicil recites—"to be used and enjoyed by my said wife during the period of her natural life"; again at line twelve of Item I of the codicil—"that my said wife shall have the use and enjoyment thereof and income therefrom while she shall live." The last two lines of Item I of the codicil—"Item II of my said last will and testament is hereby changed and modified in accordance with this provision." Again in the last two lines of Item II of the codicil—"the same as though the life estate had not been created."

None of this language creates a power to sell, whereas the language of Item II of the will itself does create a power to sell. The codicil simply creates an unequivocal life estate.

See: Restatement of the Law, Property, Volume I, Section 18; Swartz v. Gehring, 7 O. C. C. 426; **Schwan, Executor v. Meinert, 56 Oh Ap 336; Nimmons v. Westfall, 33 Oh St 213; Holt v. Miller, 26 Abs 395; 11 O. O. 211**, and numerous other authority.

The language in this codicil is so completely contrary to the language contained in Item II of the will, and again in the last five lines of Item III of the will, both together cannot stand as to the 402 Salem Avenue property, and therefore, the language in the codicil of the will, being clear and certain, must control.

See: **Foye et al Executors & Trustees v. Foye et al, 35 Oh Ap 283.**

Question 2—

"Would the provisions of Item II, paragraph 2 of the last will and testament of B. F. Kiester, Sr., be applicable and extend to the property located at 402 Salem Avenue, Dayton, Ohio, as described in Item I of the codicil to the last will and testament of B. F. Kiester, Sr.?"

Answer—

The answer is no. The reasons for this answer have already been partially expressed in the answer to question one in that there is no language contained in the codicil referring to, creating, adopting or in any way implying, that the provisions of paragraph two of Item II of the will shall in any way apply to the property described in the codicil.

For cases exhibiting language affixing or attaching additional powers or incidents upon a life estate, see:

**Wetzel v. Besecker, 77 Oh Ap 235;** 161 A. L. R. 630n, 676n; **Fetter v. Rettig, 98 Oh St 428; Widows' Home v. Lippardt, 70 Oh St 261.**

Question 3—

"What interests or estate did Lula Kiester receive from B. F. Kiester, Sr., at his death by virtue of the last will and testament and codicil thereto of said B. F. Kiester, Sr., other than in the premises located at 402 Salem Avenue, Dayton, Ohio, she not having remarried?"

Question 4—

"What interests or estate, other than in the premises located at 402 Salem Avenue, Dayton, Ohio, did Lula Kiester receive from B. F. Kiester, Sr., by virtue of the last will and testament and codicil of said B. F. Kiester, Sr., since she survived said B. F. Kiester, Sr.'s only son, Benjamin F. Kiester, Jr., he having died in 1955, and she not having remarried?"

Answer—

The court chooses to answer questions three and four together. It is the opinion of the court that Lula Kiester has an undivided one-half interest for life or to be earlier terminated in the event of her remarriage, in all of the property of the testator other than the 402 Salem Avenue property, and upon the death of her son, Benjamin F. Kiester, II, prior to her death or remarriage, she then succeeded to the other undivided one-half interest, and from that time forward, she has a full or whole interest in all of the property other than the 402 Salem Avenue property, for her life, or to be earlier terminated by her remarriage. In addition to this determinable life estate, the widow, Lula Kiester, has the right or power to sell the undivided one-half of the principal of the estate initially devised to her if the need arises, in accordance with the conditions expressed in the language of the second paragraph of Item II of the will. This power or right will cease and terminate upon her death or earlier remarriage. Up until the time of her son's death, or her remarriage, she having only the right to the use, income or avails of the initial undivided one-half interest, and she could until such time, sell only an undivided one-half interest in the underlying principal of the estate thereof based on the conditions of need expressed in the second paragraph of Item II of the will.

After the event of her son's death and prior to her death or remarriage, the contingency expressed in the last five lines of Item III of the will having occurred, she was then entitled to receive the income of this undivided one-half interest in the real estate other than the 402 Salem Avenue property, without the right to sell the principal in said undivided one-half interest, since the language in the last five lines of Item III of the will did not mention or contain any power to sell this undivided one-half she took in the event of her son's death, prior to her death or remarriage.

The court sees nothing inconsistent in her inability to sell the entire underlying principal in the property of the testator, other than the 402 Salem Avenue property, either before or after her son's death, and prior to her death or remarriage, due to the fact the testator was a man of considerable means and left five parcels of real estate other than the 402 Salem Avenue property, the income from which, and the power of sale of an undivided one-half interest in said other realty being amply sufficient to meet her needs. Such limitation restricts her from alienating the other undivided one-half interest, and from destroying the full remainder estate, thus giving consistency to the testator's true intention.

The words "In the event of the death of my son, Benjamin F. Kiester, Jr., during the widowhood of my said wife, Lula Kiester, then, and in that event, it is my will that my said wife shall have and enjoy the

proceeds of one-half of my estate devised to my said son by my said last will and testament so long as she remains my widow," contained in the last five lines of Item III of the will, clearly import this executory determinable life estate in the widow, in the remaining undivided one-half interest.

For authority construing the word "proceeds" to mean income or avails i. e. life estate, see:

Browning v. Ashbrook's, Exr., 175 Ky. 755; 195 S. W. 105, 108.

"Where testator's will gave his wife all the 'proceeds' of his estate as long as she remained his widow, the term 'proceeds' meant income."

Gorin Sav. Bank v. Early, Mo., 260 S. W. 480, 483.

"The word 'proceeds' when applied to the income to be derived from real estate embraces the idea of issues, rents, profits, or produce."

Appeal of Robert, 92 P. A., 407, 419.

" 'Proceeds' as used in a will devising property to trustees, and directing the trustees to distribute the proceeds thereof in a certain designated manner, is to be construed to mean 'income.' "

Appeal of Thomson, 89 Pa. 36, 46; In re Thomson's Estate, Pa., 12 Phila. 313, 315.

" 'Proceeds,' as used in a will bequeathing certain property to trustees, the income to be devoted to certain purposes, with power to sell any of the property and reinvest the proceeds and also directing that so much of the proceeds of the property should be paid to a certain person as she may deem necessary for the maintenance of herself and another, should be construed to mean the income which had been devoted to the purposes of the will."

Gibbs v. Barkley, Tex. 242 S. W. 462, 465;

"Under a deed conveying a life estate to grantor's daughter with remainder to her children, a concluding clause appointing the daughter's husband trustee to use the property and its 'proceeds' for the sole use and benefit of his wife, and the children did not vest title in him as trustee, no words of conveyance being contained therein, and the word 'proceeds,' which is synonymous with 'product,' 'yield,' 'income,' 'receipts,' and 'return,' being employed in the sense of income from the property, which the trustee had power to manage and control, rather than to confer a power of sale."

For authority as to the language creating a determinable life estate, see:

Fetter v. Rettig, 98 Oh St 428; Coyle v. Underwood, 55 Abs 257; 41 O. O. 465; Huston et al v. Craighead et al, 23 Oh St 198; Wetzel v. Besecker, 77 Oh Ap 235; 32 O. O. 522; Fletcher v. Rynd, 18 Oh Ap 136.

9 Ohio State Law Journal 373, under "Wills-Construction of Ambiguous Devisee-Fee Simple or Life Estate" reads:

"Testatrix was beneficiary of her sister's will, which read in part: '. . . the balance of my estate both real and personal of every description be given to my sister,—to do with and use as she sees best fit to do. And after her death, what is left if any be given to my nephew's children.' Plaintiffs are the nephew's children and claim as remaindermen under the clause; defendant is testatrix' husband, executor and residuary devisee. Plaintiffs contend that the first taker (the testatrix) took only

a life estate with a power of disposition under the clause under construction. Defendant contends first taker took a fee and that plaintiffs took nothing, the attempted limitation over being void. Held, first taker received a life estate with a power to consume for her benefit. DeWolf v. Frazier, 80 Oh Ap 150, 73 N. E. 2nd 212 (1947).

"The case is in accord with the Ohio line of authority in construing an ambiguous devise with an accompanying power as a devise of a life estate. Baxter v. Bowyer, 19 Oh St 490 (1866); Johnson v. Johnson, 51 Oh St 446, 38 N. E. 61 (1894); Robbins v. Smith, 72 Oh St 1, 73 N. E. 1051 (1905); Fetter v. Rettig, 98 Oh St 428, 121 N. E. 696 (1918); Raymund v. Williams, 100 Oh St 544, 127 N. E. 925 (1919); Tax Commission v. Oswald, 109 Oh St 36, 144 N. E. 678 (1923); Murphy v. Widows' Home and Asylum, 21 Oh Ap 174, 151 N. E. 783 (1925).

"Baxter v. Bowyer, supra, is a leading case for the proposition that a devise in general terms, which by itself would be sufficient to pass a fee, vests only a life estate where a gift over of a remainder follows the primary devise. At the time the Baxter case was decided, the leading cases in the field held, under similar fact situations, that the devise was of a fee, and that the attempted limitation over was void. Jackson, ex dem. Brewster v. Bull, 10 Johnson 19 (N. Y. 1813); Jackson, ex dem. Livingston v. Robins, 16 Johnson 537 (N. Y. 1819). The court in the Baxter case justified their decision on a slight distinction between the words of the grant of the remainder in the Ohio situation and those of the instruments under construction in New York. The court stated that the words 'all the property remaining' in the Baxter will imported considerably less control of the property by the first taker than did the words 'such part of the estate as . . . (the devisee) . . . chose to leave' in the two New York cases, and therefore held that the Baxter will conveyed only a life estate to the first beneficiary. This fine distinction has apparently never been made by courts in other states and has not been made by the courts of Ohio in subsequent cases, although the courts have uniformly reached the same result as did the court in the Baxter case.

"Later Ohio cases, in determining the nature of the estate devised have relied on several intrinsic factors. If the words of the devise state specifically 'for life,' there is, or course, no problem. If the devise is in general terms, the presence and nature of any power of disposition of the subject matter is significant, but not controlling. Where the estate given is not accompanied by any power of disposition, it is generally held that the devise is one of a fee simple and that any attempted limitation over is void. Steuer v. Steuer, 8 O. C. C. (N. S.) 71, 28 O. C. C. 145 (1905); Trumbull v. Stentz, 30 Oh Ap 34, 164 N. E. 57 (1929); Krumm v. Cuneo, 71 Oh Ap 521, 47 N. E. 2d 1001 (1942). Also, where the estate given is accompanied by an unlimited and unrestricted power of absolute disposition of the subject matter of the devise, it is generally held that the devise is one of a fee simple, and that any attempted limitation over is void. Wells v. Brown, 167 C. C. A. 180, 255 Fed. 852 (1919); Eubank v. Smiley, 130 Ind. 393, 29 N. E. 919 (1892); Kelley v. Meins, 135 Mass. 231 (1883); Helmer v. Shoemaker, 22 Wend. 137 (N. Y. 1879). In only one instance have the courts of Ohio construed the accompanying power

as being unlimited and unrestricted and in that case the estate had been conveyed by the first taker in her lifetime, **Widows' Home v. Lippardt,** 70 Oh St 261, 71 N. E. 770 (1904). Where the power of disposition in the first taker is limited as to its exercise—e. g., a power to dispose of in any manner she choose except by will—the devise is construed as one of a life estate only. Tuthill v. Davis, 121 App. Div. 290, 105 N. Y. Supp. 672 (2d Dep't 1907); Johnson v. Johnson, supra; Tax Commission v. Oswald, supra; Murphy v. Widows' Home and Asylum, supra.

"The Johnson case, supra, exemplifies the reluctance of the Ohio courts to invalidate a remainder over in the face of a power of disposition in the first taker. In this case, the power was described in the will as 'full power to bargain, sell, convey, exchange or dispose of as she may think proper.' The court held that the devisee was limited as to the exercise of the power to the consumption of the property during her lifetime. The court cited Baxter v. Bowyer but made no mention of the distinction in wording discussed earlier. Since the Johnson case, the courts have tended to infer from the presence of any power that the intention of the testator was to grant a limited power of consumption during the lifetime of the first taker, and thus have validated otherwise meaningless gifts over to successive remaindermen."

For authority that the language in the last five lines of Item III of the will creates a concurrent life estate and an executory life estate in the widow, see Restatement of the Law, Property, Vol. 1, Sec. 114-115; Smith v. Block, 29 Oh St 488; Clyde Holt et al v. Howard Miller et al, 133 Oh St 418; 11 O. O. 211.

Question 5—

"What interest did Benjamin F. Kiester, Jr., only son of the testator, B. F. Kiester, Sr., receive in the real estate and personal property owned by B. F. Kiester, Sr., at the time of B. F. Kiester, Sr.'s death, by virtue of the provisions of Item III and Item V of the last will and testament of said testator, and Item I and Item II of the codicil of said testator?"

Answer—

The court chooses to answer this in two parts—first as applying to the property at 402 Salem Avenue in the codicil, and second, as applying to the property other than at 402 Salem Avenue.

(1) As to the 402 Salem Avenue property: The court finds the son of testator, Benjamin F. Kiester, II, took only a contingent remainder in said property, the contingency being clearly expressed in the language of Item II of the codicil, which recites as follows:

"Item II: Upon the death of my said wife said tract of real estate embraced in Item I hereof shall pass to my son, Benjamin F. Kiester, Jr., or, in the event of his previous death, to the issue of his body, or in the event he shall die without such issue then to my brothers and sister or their legal representatives, as I have set out and provided for in Items III, IV and V of said last will and testament; in other words, said real estate so given to my said wife during her lifetime shall, upon her death, be subject to the same provisions of said original last will and testament the same as though the life estate had not been created."

Item II of the codicil clearly required the son to survive his mother, Lula Kiester, in order to take, and he did not survive her. In the event

he had survived his mother than his remainder interest would have become absolute, notwithstanding the seeming unqualified condition annexed to the one alternative contingency expressed in the part of the language—"or in the event he shall die without such issue then to—." This portion of Item II of the codicil was not intended to create an indefinite time for the failure of issue of the son or beyond his mother's death, but meant only if he predeceased his mother without issue, then certain collateral heirs of testator would take.

This meaning is supplied by a reference in Item II of the codicil to Items III, IV and V of the will for further clarification as to testator's true intention, and these items of the will itself clearly so provide. The language of Item II of the codicil is equally clear and certain that the issue of testator's son would take absolutely and without qualification in the event the son of testator died prior to his mother's death leaving issue surviving at that time. The issue would take direct from the testator and by purchase at the time the son did actually predecease his mother. Since the son of testator, Benjamin F. Kiester, Jr., or II, has predeceased his mother his interest has completely failed and has never become absolute in the 402 Salem Avenue property of the testator.

See: Sinton v. Boyd, 19 Oh St 30, Syl 2; LaRoche v. LaRoche, 10 Oh Ap 242; Manley, Appellant v. Crawford, 94 Oh Ap 500; 52 O. O. 276.

It might be stated that the son of testator had a remainder subject to a condition precedent, or that he had a vested defeasible estate.

For interesting cases discussing terminology to be applied to these various conditions of limitations over, see:

First National Bank v. Tenney, 165 Oh St 513; McCarthy v. Hansel, — Oh Ap 425.

No matter how it is stated, the result in the present case is the same. The son of Benjamin F. Kiester, II, had to survive the mother, Lula Kiester, to take any interest in the 402 Salem Avenue property, and he did not survive her.

(2) As to property other than the 402 Salem Avenue property: This class of property creates a slightly more difficult problem, but nevertheless can be handled by applying existing rules of construction to all four corners of the will and codicil. It is the opinion of the court that under Item III of the will, Benjamin F. Kiester, II, took only a life estate in an undivided one-half interest in all of the property of the testator, other than the 402 Salem Avenue property.

See, Restatement of the Law, Property, Volume 1, Section 108, and illustrations, particularly sub-section b.

He further held a contingent remainder to become absolute in the whole of said class of property, including the undivided one-half part thereof, subject to his mother's determinable life estate and power to sell, to become absolute on two conditions only, that the son either survive the death, or survive the remarriage, of his mother.

The language of Item III of the will which gave him a life estate in an undivided one-half interest, was almost identical with the language contained in Item II of the will, which gave an undivided one-half interest for life to his mother, except the latter language contained a

condition "so long as she remains my widow," not attached to the language in said Item III of the will. In neither clause was "life estate" specifically stated or mentioned. The court finds the language in Item III of the will creates a life estate, only, in the son as to an undivided one-half interest if he does not survive either the death or remarriage of his mother. The second sentence and the last five lines of Item III of the will serve to explain and qualify the son's estate:

"And after the death of my said wife it is my will that my said son shall have the whole of my estate, both real and personal absolutely."

"In the event of the death of my son, B. F. Kiester, Jr., during the widowhood of my said wife, Lula Kiester, then, and in that event is in my will that my said wife shall have and enjoy the proceeds of one-half of my estate devised to my said son, etc."

"Proceeds of one-half of my estate" again denoting avails, income, use thereof (life estate)—"devised to my son." See definition of "Proceeds" supra and citations thereunder.

The life estate as to an undivided one-half in the son is clearly implied and further substantiated by the language of Items IV and V of the will, which items including Item III of the will when read together and with Item II of the codicil, absolutely denote and define the type of estate devised to the son as constitutional only, the limitation being that if the son die prior to the death or remarriage of his mother his entire interest at his death, shall cease. But, if he survived either event, his estate would then ripen into a fee in all of this class of property and merge out his life estate in the undivided one-half interest.

The court does not find the second sentence of Item III of the will sets forth language contrary to this construction, nor does this sentence create a vested remainder estate in the son:

See: **Stophlet, Exe. v. Stophlet et al, 22 Oh Ap 327; Manley, Appellant v. Crawford, 94 Oh Ap 560; 52 O. O. 276;** Restatement of the Law, Property, Volume 1, Section 108; **Moeller v. Poland, 89 Oh St 418.**

The Manley case considers almost the same identical language as in the second sentence of Item III of the will before this court. The second sentence of Item III of the will recited "And after the death of my said wife, it is my will my said son shall have the whole of my estate, both real and personal, absolutely." The court in the Manley case found such language created a conditional estate and the recipients were not to receive the estate until after the death of the life tenant (thus a contingent remainder), especially in view of other limitative language in the will. The second sentence of Item III in this case, when read together with the other language of the four corners of the will and codicil, clearly harmonizes the intent of the testator to be that the son, Benjamin F. Kiester, Jr., shall not take the remainder estate unless he survives the death or remarriage of his mother. Item IV of the will supplies the condition that the son gets the "rest and residue" if the widow does remarry, if he survives the remarriage.

See: **Sinton v. Boyd, 19 Oh St 30; Shaw & Campbell v. Heard, 18 Oh St 227.**

The will and codicil clearly show the intention of the testator to be

that the son had a life estate in an undivided one-half interest and a contingent remainder in the whole, based on the double condition that he must survive the remarriage or at the latest survive the death of his mother if she did not remarry, in order to take.

Although the will itself was silent as to who would take if the son predeceased the mother, she not having at the time of the son's death remarried, and the son leaving issue at his death, which event occurred, this omission by itself, in the will only, cannot aid the son and defeat the testator's clear intention that the son should take only in the event he survived the death or remarriage of his mother, Lula Kiester. Neither can the so-called definite failure of issue rule be called to the aid of the son, it being inapplicable to this case. Who would take in such event can be answered in two ways—first by the rule of implication.

See: **Shaw & Campbell v. Hoard, 18 Oh St 227**; Shepard v. Peratina, 182 Fed. 2nd, 384; Restatement of the Law, Property, Volume 3, Section 272; and see also a very excellent article on this subject in 22 A. L. R. 2nd, 178. The will and codicil clearly show the implication that the son was not to take if he predeceased the remarriage or death of his mother, even if he did leave issue at his death, but in such event the issue would take, and the language of the will and codicil is so strong as to leave no doubt.

Secondly, and uppermost, irrespective of the implication rule, the court is of the opinion the language of Item II of the codicil from the fourth line on through, does clearly amend the omission mentioned aforesaid as contained in the will. This language clearly explains and modifies the will to the extent needed to correct the will and supply the missing contingency in the will, without defeating the general harmony of the will and the codicil.

See: **Foye et al, Executors & Trustees v. Foye et al, 35 Oh Ap 283.**

It is axiomatic that where a codicil and will are contradictory, the codicil will still control, and the will cannot be read so as to succeed a codicil. In the subject case the will and codicil are not contradictory, the will merely having an omission which the codicil clearly remedies. The whole purpose of the codicil was to change the undivided one-half determinable life estate of the widow in the 402 Salem Avenue property with a power to sell, into a full base life estate, without a power to sell, and leave the will as to other property as it was or in status quo.

The codicil of the will clearly states this, and at the same time remedies the omission found in the will. It cannot be thought the testator did not know of the omission in the will at the time of the execution of the codicil and therefore could not and would not correct the apparent error in the will. On the contrary, at the time of the execution of the codicil, the evidence clearly and convincingly shows the testator had a grandson living, one Benjamin F. Kiester, III, being the issue of his only son, Benjamin F. Kiester II, while on the other hand no issue of his son was living at the time testator executed the will. To say that testator was not cognizant of the possible needs of this infant grandson, aged three months, and any other issue of his son to come later, on the date of the codicil, when the testator had gone

to such great length to protect his lineal line in his codicil, is preposterous. Also, the evidence clearly shows and supports that the testator was a middle aged man of great experience, being a doctor, and it is equally preposterous to assume he did not know of the frailties of his son, Benjamin F. Kiester, II, then a mere boy of twenty one years of age. The court believes he clearly recognized the frailty of both his son and his wife, and accordingly took wise precautions.

Question 6—

"Since Lula Kiester has survived her only son, who died August 19th, 1955, and since Lula Kiester has never remarried, and since Benjamin F. Kiester, III, and Carolyn Jean Kutz have also survived their father, Benjamin F. Kiester, Jr., and are the only issue of his body, what interest does Benjamin F. Kiester III and Carolyn Jean Kutz receive in the property at 402 Salem Avenue, Dayton, Ohio, all as provided in the last will and testament of B. F. Kiester, Sr., together with the codocil?"

Question 7—

"Since Lula Kiester has survived her only son, who died August 19th, 1955, and since Lula Kiester has never remarried, and since Benjamin F. Kiester III and Carolyn Jean Kutz, have also survived their father, Benjamin F. Kiester, Jr., and are the only issue of his body, what interest or estate does Benjamin F. Kiester III and Carolyn Jean Kutz receive in the property and estate of the testator, other than the property located at 402 Salem Avenue, all as provided in the last will and testament of B. F. Kiester, Sr., together with the codicil?"

The court will answer questions six and seven together.

From all that the court has said before it clearly and naturally follows that it is the opinion of the court that Benjamin F. Kiester, III and Carolyn Jean Kutz, being the only issue and the only living issue of their father, Benjamin F. Kiester, II, now deceased, have at this time a vested remainder in all of the estate and interest of the testator, Benjamin F. Kiester, Sr., their grandfather, whether the estate be at 402 Salem Avenue or elsewhere, and that their remainder became absolutely vested at the time of the death of their father, Benjamin F. Kiester, II, he having died prior to the death or the remarriage of his mother and their grandmother, testator's widow, Lula Kiester, who is still living and unmarried. The court further finds their vested interest is subject only to the life estate in their grandmother, Lula Kiester, in the 402 Salem Avenue property described in the codicil and subject only to her life estate and power to sell the undivided one-half interest as found aforesaid in the property other than the 402 Salem Avenue property.

See: **Eastman v. Sohl, 66 Oh Ap 383; 20 O. O. 305; Alexander v. Willis, 30 Oh Ap 289, 2nd syl; Johnson v. Johnson, 51 Oh St 446.**

In determining the interest aforesaid in the two grandchildren the court is of the opinion that before the death of their father, Benjamin F. Kiester, II, said grandchildren held contingent remainders, which were in the nature of alternative contingent remainders, the other contingent remaindermen being the class of collateral heirs set out in Item V of the will and that once the issue survived their father, Benjamin F. Kiester, II, he having predeceased his mother, testator's widow, she

not having remarried, their interests became absolutely and indefeasibly vested.

Linton v. Laycock, 33 Oh St 128.

The court can find no language in the will or in the codicil to the effect the son's issue must also survive their grandmother, testator's widow, who is still living. The law clearly favors vesting of estates at the earliest possible moment. The death of the son of testator, prior to the death or remarriage of testator's widow, in the case at bar, was the earliest possible moment for vesting.

See: Smith v. Block, 29 Oh St 488-497; Briggs v. Hopkins, 103 Oh St 321; Cleveland Trust Co. v. Mansfield, 34 O. O. 26; Simes & Smith on the law of future interests, Vol. 1, Sec. 149.

Question 8—

"What is the true meaning and intention of the testator, B. F. Kiester, Sr., as determined from reading together the terms of the last will and testament of testator, and the terms of the codicil of testator?"

Answer—

Question eight has now been answered in the foregoing answers under the above.

The court wishes to add, however, that it finds from all the evidence that all the personal property owned by Benjamin F. Kiester, Sr., the testator, was consumed, either in paying the debts at the time of his decease, or as provided in Items VII and VIII of the last will and testament. The intended beneficiaries set forth in Item V of the last will and testament take nothing because the son of the testator, Benjamin F. Kiester, II, died leaving issue, and before the death or remarriage of his mother, Lula Kiester.