JOURNAL ENTRY AND OPINION.
{¶ 1} Defendants-appellants, Gary O. Miller, Kenneth D. Miller, Keith E. Miller and Dale L. Miller, appeal the decision of the Cuyahoga County Common Pleas Court, Probate Division, adopting the findings and conclusions of the magistrate and ordering that the Trustee of the Lloyd G. Miller Trust pay $57,772.00 in fair-market rental value to plaintiff-appellee, Julia Miller, and immediately vacate the property at issue and return possession of the property to Mrs. Miller. For the reasons that follow, we affirm in part, reverse in part and remand.
 {¶ 2} The underlying facts of this case were set forth by this court in Miller v. Miller (Aug. 17, 2000), Cuyahoga App. Nos. 75622 and 75623, as follows:
 {¶ 3} "Lloyd Miller, then age 47 years, and Julia Dzurinda, then age 51 years, were married on October 4, 1968. Throughout the course of their marriage they resided at 6207 Hampstead Avenue, Parma, Ohio; a home owned by Mr. Miller. A[nother] residence, owned by Mrs. Miller prior to her marriage, was located in Hinckley, Ohio. Her son from a previous marriage, Steven Dzurinda, lived there after her marriage, paid the mortgage on the property and paid monthly rent of $250.00 to Mr. Miller.
 {¶ 4} "Mr. Miller had four sons from a previous marriage; Kenneth, Keith, Gary, and Dale. Of these, three were under the age of fifteen in 1968 and lived in the Hampstead Avenue home until reaching adulthood.
 {¶ 5} "Mr. Miller retired from Cleveland Twist Drill in 1981. On December 29, 1993, Mr. and Mrs. Miller each endorsed a Revocable Living Trust and Accompanying Will, prepared by Robert W. Sinkovic, who was not a licensed attorney. The trust agreements provided that each would be both settlor and trustee of his own individual trust. The instrument at issue included the following waiver clause signed by Mrs. Miller in the Lloyd G. Miller Trust:
 {¶ 6} "`I, the undersigned legal spouse of the settlor (Mr. Miller), hereby waive all community property, dower or courtesy rights which I may have in the herein-above-described property and give my assent to the provisions of the trust and to the inclusion of said property.'
 {¶ 7} "Also included in the trust was an attachment listed as the `Schedule of Beneficiaries and Distributive Shares,' which included the following:
 {¶ 8} "`The Following are the named Beneficiaries of the Lloyd G. Miller Trust as of this 29th day of December, 1993.
 {¶ 9} "`2. The property located at 6207 Hampstead Avenue in the City of Parma, State of Ohio, along with the furniture and fixtures is to be distributed as follows:
 {¶ 10} "`Julia Miller will have life rights to live in the residence located at 6207 Hampstead Avenue, Parma, Ohio, 44129. She may reside there as long as she lives. She will be responsible for any maintenance expenses such as water, sewer, real estate taxes. At the time of her death the property will then be sold and distributed to my said below children in equal shares or to the survivor.
 {¶ 11} "`3. All power tools and property of the Trust will be distributed to my said below children in equal shares or to the survivor:
 {¶ 12} "`Gary O. Miller
 {¶ 13} "`Kenneth D. Miller
 {¶ 14} "`Keith E. Miller
 {¶ 15} "`Dale L. Miller'"
 {¶ 16} "On December 29, 1993, Mr. Miller endorsed a quitclaim deed that transferred the Hampstead Avenue home to the Lloyd G. Miller Trust. A subsequent quitclaim deed, endorsed October 30, 1995, indicated that Mr. Miller, as `Trustee,' transferred the Hampstead Avenue property to himself as `Trustee' of the `Lloyd G. Miller Trust Dated 12-29-93.' The second deed was endorsed by both Mr. and Mrs. Miller. On January 25, 1996, Mr. Miller transferred title of his 1993 Ford Taurus to the Lloyd G. Miller Trust. On March 15, 1996, Mr. Miller changed his Twist Drill death benefit and retirement beneficiary to name his son Gary.
 {¶ 17} "Mr. Miller died of complications from colon cancer on April 27, 1996. Mrs. Miller, unable to cope with the loss of her husband, was hospitalized two days after his death. Gary Miller then changed the locks of the Hampstead home and Kenneth Miller moved in. Mrs. Miller was diagnosed with dementia and currently resides in her son's home. To date, her total distribution from Mr. Miller's possessions consists of a bed, a dresser and $5,000 as the survivor of a joint and survivorship bank account with Third Federal Savings Loan Association.
 {¶ 18} "Miller's sons received the automobile; approximately $70,000 from their father's Twist Drill Hourly Pension Plan through the Lutheran Brotherhood, and the Hampstead home and its furnishings. Gary and Kenneth were the joint and survivor beneficiaries of a $39,000 Third Federal Savings account while Kenneth withdrew the entire balance of $12,482.22 from a joint and survivorship account #0089034623 at Third Federal Savings in which he and Mrs. Miller were the joint survivors. Gary received the $6,000 Twist Drill death benefit."
 {¶ 19} In October 1996, Mrs. Miller filed a complaint for declaratory judgment in the Cuyahoga County Court of Common Pleas, Probate Division, seeking 1) a declaration that the Lloyd G. Miller Trust was invalid; 2) a determination of the ownership of the joint and survivorship account #0089034623 with Third Federal Savings; 3) a determination of her right to possession of the Hampstead Avenue home; and 4) the rightful distribution of the pension fund with Lutheran Brotherhood.
 {¶ 20} A hearing before the magistrate ensued and the trial court subsequently adopted the magistrate's decision. On appeal, this court affirmed the trial court's conclusion that the Lloyd G. Miller Trust was a valid instrument through which Mr. Miller could circumvent the dower rights of his wife. We also held that the trial court erred in affirming the magistrate's decision finding that Mrs. Miller was entitled to the entire account balance in the joint and survivorship account #0089034623 and remanded the case for a determination of the proper distribution of the account.
 {¶ 21} Most significantly for purposes of this appeal, however, we also held that the trial court committed plain error in not ruling on Mrs. Miller's claim that she was improperly ousted from the Hampstead Avenue home. As the concurring judge stated,
 {¶ 22} "The terms of the trust agreement provided Julia Miller with the right to reside in the marital residence until the time of her death. This right could be exercised at any time during her life, and did not require her continuous habitation at the house in order to be effective. The record convincingly shows that one of Lloyd Miller's sons took possession of the house and converted it to his own use with no apparent regard for his step-mother's interest in the property. While that son was one of four remaindermen (along with his three brothers), his right to inhabit the property did not, and could not, vest until Julia Miller's death. * * * There is no evidence whatsoever to overcome Julia's right to live in the house. * * *."
 {¶ 23} Accordingly, we remanded the case for a determination of Mrs. Miller's rights to the use of the Hampstead Avenue home.
 {¶ 24} On remand, the magistrate determined that the language employed by the Lloyd G. Miller Trust created a life estate in favor of Mrs. Miller. The magistrate also determined that the life estate vested Mrs. Miller with the right to reside in the residence or to rent it and that the successor Trustee (Gary Miller; hereafter "Trustee") usurped that right by changing the locks to the property and permitting his brother (Kenneth Miller) to take up residence there. Accordingly, the magistrate concluded that the Trustee was required to compensate Mrs. Miller $57,772.00 as the reasonable rental value of the property for the time she was deprived of her use of the property. The magistrate recommended that the Trustee be credited with the payment of any property taxes he may have paid during the six-year period in which he oversaw the property. Finally, the magistrate recommended that the Trustee be ordered to immediately vacate the Hampstead Avenue property and return possession of the property to Mrs. Miller.
 {¶ 25} Appellants filed objections to the magistrate's decision. The trial court subsequently overruled appellants' objections and adopted the decision of the magistrate.
 {¶ 26} Appellants filed a timely notice of appeal, raising five assignments of error for our review.
 I. {¶ 27} In their first assignment of error, appellants contend that the trial court erred in finding that Mrs. Miller had a life estate in the property.
 {¶ 28} Appellants first argue that Mrs. Miller possessed only "life rights" to reside in the home, subject to a condition subsequent, i.e., her payment of maintenance expenses such as water, sewer and real estate taxes. According to appellants, Section 3 of the Trust reserved the right to hold, sell, lease or rent any of the trust property to the Trustee, a right that appellants contend created a right of re-entry or forfeiture in the Trustee. Therefore, appellants contend, when Mrs. Miller voluntarily vacated the property and did not pay the maintenance expenses and property taxes for the home, the Trustee simply exercised his right to re-enter the property. We disagree.
 {¶ 29} The Trust provides that "Julia Miller will have life rights to live in the residence located at 6207 Hampstead Avenue, Parma, Ohio, 44129. She may reside there as long as she lives. She will be responsible for any maintenance expenses such as water, sewer, real estate taxes. Atthe time of her death the property will then be sold and distributed to my said below children in equal shares or to the survivor." (Emphasis added.)
 {¶ 30} Although Section 3 of the Trust gives the Trustee the right to manage the real property, the only reversion included in the clause giving Mrs. Miller the right to live in the Hampstead Avenue property is triggered when Mrs. Miller's life ends. No specific right to forfeiture, reversion or re-entry is either expressly or by implication attached to the language in the Trust regarding Mrs. Miller's responsibility for paying the maintenance expenses. "In the absence of a provision for forfeiture, reversion or re-entry, such statement creates no limitation upon the grant and the grantee takes an estate without limitation." Blatzv. Meier (Sept. 27, 1978), Van Wert App. No. 15-78-1. Accordingly, the Trustee had no right of re-entry or forfeiture, even though Mrs. Miller did not live on the property or pay the expenses associated with it.
 {¶ 31} Appellants next argue that Mrs. Miller did not have a life estate in the Hampstead Avenue property because she did not have the rights to rent the property or assign her interest in the property, the usual powers of a life tenant. According to appellants, the Trustee of the Lloyd G. Miller Trust retained those rights pursuant to Section 3 of the Trust and, therefore, the Trust conveyed to Mrs. Miller only a right to remain in the residence for life, not a life estate. Once again, we disagree.
 {¶ 32} First, because Mrs. Miller had the right to live in the Hampstead Avenue property until her death, it is apparent that the Trustee had no power to rent, sell or otherwise dispose of the Hampstead Avenue property until she died. Thus, appellants' citation to Thomas v.United States (N.D.Ohio. 1962), 207 F. Supp. 609, is inapposite. In that case, the District Court for the Northern District of Ohio held that the devise of the marital home to a widow "during her lifetime" did not create a life estate where the Trustee, in his "absolute discretion," was vested with power to sell any of the trust property at any time and the widow could not prevent the sale of the marital home, even during her lifetime. Here, however, the Trust specifically provided that the home was not to be sold until Mrs. Miller's death.
 {¶ 33} Moreover, as the Sixth Appellate District held in Fruth v.Schultz (May 12, 1995), Wood County App. No. WD-94-052, there is no requirement that the grantor specifically grant the possessor of a life estate the authority to rent, lease or assign the interest in order to create a life estate. A devise of the use of property during the life of the devisee is in effect a devise of the property itself for life, as is a gift of the right to live on certain real estate for life. Gilpin v.Williams (1867), 17 Ohio St. 396; Wloszek v. Wloszek (Apr. 16, 1998), Cuyahoga App. No. 73032; Swartz v. Gehring (1892), 6 Ohio Cir. Dec. 173;Kiester v. Kiester (1957), 3 Ohio Op.2d 481.
 {¶ 34} We agree with the trial court that, on the facts of this case, Mrs. Miller was vested with a life estate in the Hampstead Avenue property and the Trustee usurped that right by changing the locks and permitting his brother to take up residence in the home.
 {¶ 35} Appellants' first assignment of error is overruled.
 II. {¶ 36} In their second assignment of error, appellants contend that the trial court erred in finding that Mrs. Miller was deprived of her use of the property. Appellants argue that Mrs. Miller chose not to use or remain at the Hampstead Avenue home and, therefore, contrary to the trial court's finding, she voluntarily abandoned the property.
 {¶ 37} Essentially, appellants argue that the trial court's finding was against the manifest weight of the evidence. In determining whether a judgment is against the manifest weight of the evidence, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost his or her way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. As long as there exists competent, credible evidence in the record to support the court's decision, it will not be reversed as against the manifest weight of the evidence. C.E.Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279, syllabus;Seasons Coal Co.
 {¶ 38} v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 39} Here, the trial court's finding that Mrs. Miller was ousted from the Hampstead Avenue home and her rights usurped by the Trustee is amply supported by the evidence in the record. Steven Dzurinda, Mrs. Miller's son, testified that the locks on the Hampstead Avenue property were changed within four or five days of Mr. Miller's death but neither he nor his mother were ever given a new key. Dzurinda testified further that his mother subsequently wanted to return to her home, but "felt threatened because one of the boys was living in the house and she did not want to live with the person that was in that house."
 {¶ 40} Kenneth Miller admitted that the locks on the house were changed shortly after his father died, without permission from Mrs. Miller. Gary Miller admitted that his brother Kenneth moved into the house shortly after his father died and that he never sent a new key to Mrs. Miller.
 {¶ 41} On this evidence, we cannot find that the trial court lost its way and created such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered.
 {¶ 42} Appellant's second assignment of error is therefore overruled.
 III. {¶ 43} In their third assignment of error, appellants contend that the trial court erred in ordering the Trustee to pay Mrs. Miller $57,772.00 as compensation for the fair-market rental value of the property for the time she was deprived of her use of the property. Appellants contend that because the Trust reserves the right to sell or rent the property to the Trustee, Mrs. Miller has no right to rent it to anyone else if she does not live there. Accordingly, appellants contend, she is not entitled to receive rental income from the property for the period of time she did not reside there. We do not agree.
 {¶ 44} Contrary to appellants' argument, the Trustee has no right to rent the property to anyone, either during Mrs. Miller's lifetime or after her death. The Trust provides that Mrs. Miller may live in the property until her death and at that time, the property is to be sold. Thus, the Trustee has no authority to rent or otherwise dispose of the property during Mrs. Miller's lifetime.
 {¶ 45} Moreover, we have already determined that the Trust granted Mrs. Miller a life estate in the property. As noted in Fruth, supra:
 {¶ 46} "The scope of the life tenant's power is broad. It includes a power to sell, to give away, to mortgage, or to lease the land for a period not greater than the duration of the transferor's estate. * * * Leases given by the life tenant expire on the death of the original measuring life." 2 Powell on Real Property (1994), 15-57, 15-58, ¶ 203(3). See, also, Winters Natl. Bank Trust Co. v. Shawen (1964),33 Ohio App.2d 28, 95 Ohio Law Abs. 337, 347, 205 N.E.2d 135 (life estate without power to rent constitutes tenancy at will); 1 McDermott's Ohio Real Property (4 Ed. 1988) 433, 11-63A; see, generally, 41 Ohio Jurisprudence 3d (1983) 480-481, Estates, Powers, and Restraints on Alienation, Section 56."
 {¶ 47} Accordingly, Mrs. Miller received an inherent power to rent the property in which she was granted a life estate and, therefore, the trial court did not err in holding that she was entitled to compensation in the amount of $57,772.00, the fair-market rental value of the property for the period of time in which she was ousted from the property.
 {¶ 48} Appellant's third assignment of error is overruled.
 IV. {¶ 49} In their fourth assignment of error, appellants contend that the trial court erred in ordering the Trustee to immediately vacate the Hampstead Avenue property and return possession of the property to Mrs. Miller. Appellants argue that because Mrs. Miller voluntarily abandoned the property and did not pay the maintenance fee, utilities and taxes associated with the property, she relinquished her right to reside there.
 {¶ 50} Appellants did not raise this issue in the trial court, however, and therefore waived the alleged error for purposes of appeal. See, e.g., State v. Lorraine (1993), 66 Ohio St.3d 414; State v.Morris (1975), 42 Ohio St.2d 307, 311; Lippy v. Society National Bank
(1993), 88 Ohio App.3d 33, 40. Moreover, appellants' arguments with respect to this assignment of error are the same as those addressed in assignment of error two, which we found to be without merit.
 {¶ 51} Appellants fourth assignment of error is therefore overruled.
 V. {¶ 52} In their fifth assignment of error, appellants assert that the probate court erred in not ordering that the Trustee be credited with the payment of any property tax he paid during the six-year period in which he oversaw the property.
 {¶ 53} Pursuant to R.C. 323.41, a holder of a life estate is required to "pay the tax on lands or town lots of which he is seized for life * * *." A remainderman to a life estate who pays taxes on the real estate has a right to recover from the life estate holder. Robison v.Bowler (1911), 33 Ohio Cir. Dec. 102.
 {¶ 54} The record reflects that Kenneth Miller, one of the remaindermen, paid the property taxes on the Hampstead Avenue property from the time he moved into the house in 1996 until 2001. Accordingly, the trial court erred in not ordering that Mrs. Miller reimburse Kenneth Miller for payment of any property tax that he paid during the six years he oversaw the property. Notably, there was no testimony that the Trustee paid the property taxes on the property. Accordingly, contrary to appellants' argument, there is no basis for compensating the Trustee.
 {¶ 55} Appellants' fifth assignment of error is sustained. The trial court's order is reversed to the extent that it does not order Mrs. Miller to reimburse Kenneth Miller for any property tax he paid on behalf of the Trust for the Hampstead Avenue property and the matter is remanded for entry of an order consistent with this opinion.
Affirmed in part, reversed in part and remanded.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellee recover from appellants costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE KILBANE, P.J. and FRANK D CELEBREZZE, JR., J, concur.