HENRY D. MUEGEL *v.* STATE OF INDIANA.

[No. 1270S306. Filed September 7, 1971.
Rehearing denied October 26, 1971.]

*William R. Wilson, Hooper, Wilson & Hoffman,* of Lawrenceburg, for appellant.

*Theodore L. Sendak,* Attorney General, *M. Daniel Freidland,* Deputy Attorney General, for appellee.

ARTERBURN, C. J.—On March 10, 1971, two criminal affidavits were filed against the appellant, Henry D. Muegel. The first affidavit contained two counts: Count 1 charged the appellant with having under his control and unlawfully possessing certain hypodermic syringes and needles with the intent to violate the Acts of the General Assembly of Indiana of 1935, ch. 280, Count 2 charged the appellant with unlawfully possessing narcotic drugs. The second affidavit charged the appellant with violation of the Dangerous Drug Act. Appellant entered a plea of not guilty to all charges. Trial was by jury, who found the appellant guilty of all the charges. The judgment entered by the court reads as follows:

> "Mr. Muegel pursuant to the verdicts of the jury and the court finding you guilty of the three (3) counts at a jury trial guilty as charged. The probation officer having prepared and filed your pre-sentence investigation as required by law of the court now coming to pass sentence, sentences you to two (2) to ten (10) years at the Indiana State Reformatory, one (1) to ten (10) years at the Indiana State Reformatory and one (1) to five (5) years at the Indiana State Reformatory as addition thereto on each fine of $500."

The record shows that State Police Officer Jon Oldham was traveling on Interstate Highway 74, in Dearborn County, April 4, 1970, when he spotted what appeared to be an abandoned car parked along side the highway. As was his duty, Officer Oldham approached the car and found it abandoned. The door on the drivers side was unlatched and the window partially down. He then began looking for a certificate of registration. He first looked on the steering column, finding nothing he then opened the glove box, whereupon a small bottle fell out onto the floor. Officer Oldham picked up the bottle and observed that it contained several small white pills. The bottle had no label but only a piece of paper inside. While Officer Oldham admitted he was not particularly suspicious,

as to the bottle of pills, he was curious because it did not have a proper label. Soon after the bottle fell out of the glove box a wrecker drove up behind the parked car. Henry D. Muegel, the driver of the car found by Officer Oldham, got out of the wrecker and approached the car. Immediately, Officer Oldham observed that Mr. Muegel appeared to be intoxicated. In the course of his direct examination Officer Oldham in part gave the following testimony.

"Q. Did you notice anything unusual about him when he got out of the wrecker?

"A. Right. I thought it was a drunken driver. I thought he was a drunken driver as he stepped out of the car.

Q. Why did you think that?

"A. Because when he hit the ground he staggered and his walk was uneven and he just looked to me to be intoxicated.

"Q. Was there anything unusual about his manner in which he acted while he was talking to you?

"A. Right. He was constantly moving and he couldn't stand still and his hands were all over his head. He was doing unusual actions of swaying. We have a test which we put suspected people of driving under, as far as walking lines and walking straight lines, which he completely failed in my observation.

"Q. Now you said he failed. In what sense?

"A. The fact that he could not walk in a straight line and would go side to side and go completely off the line and almost fell to his knees one time."

Officer Oldham also described Mr. Muegel's speech as "thick tongue and slurred somewhat." Officer Oldham testified, as did other witnesses, that he could not smell any odor of alcohol on Mr. Muegel, he therefore was still not certain what was wrong with Mr. Muegel. Thinking it might help clear up the mystery, Officer Oldham requested permission to look in the car, whereupon Mr. Muegel replied, "Look the Son of a Bitch over." Prior to the request, Officer Oldham had informed Mr. Muegel of his constitutional rights. Officer Oldham again

looked in the dash pocket and found two glass vials, one containing a clear liquid and the other a brown liquid. Mr. Muegel told Officer Oldham that the clear liquid was an alcohol solution for removing stains, however, Officer Oldham said he smelled the liquid and could smell no alcohol. Officer Oldham then asked Mr. Muegel if he would go with him to the Dearborn County Jail to talk to State Police Detective Paul Alford, and Mr. Muegel said he would go. Mr. Muegal then took off his sports coat and threw it on the rear floor of his car and put on a windbreaker type jacket. Officer Oldham observing the unusual conduct picked up the coat from the back floor of the car and searched it. Officer Oldham found that the coat contained three hypodermic syringes and ten needles. Officer Oldham then took Mr. Muegel to the Sheriff's office. A urine sample was obtained from Mr. Muegel. The urine sample, pills, and vials of liquid were sent to the Indiana State Police laboratory for analysis, the urine sample was sent on to the Indiana Toxicology Laboratory. At trial expert testimony was given that the pills were Barbituric tablets, the clear liquid in one of the vials was Barbituric and Amphetamine, the brown liquid in the other vial was Paregoric (Camphorated Tincture of Opium), and the urine sample contained Barbiturates.

Appellant first contends that the initial search of the dash pocket was illegal and that the bottle of pills found was inadmissible because it was the fruit of an unlawful search. This initial search made by Officer Oldham was not an unreasonable search in violation of appellant's constitutional rights and the evidence obtained in the search was not therefore tainted with any illegality. The record clearly shows that the purpose of the search of the dash pocket was to find the certification of registration of the abandoned car, action which was the duty of Officer Oldham. Further, in our opinion the looking into the dash pocket in an attempt to find the certification of registration and thereby learn the identity of the owner of the car was not a "search" within the constitutional proscription. In *Koscielski* v. *State* (1927), 199 Ind.

546, 549, 158 N. E. 902, a police officer had stopped a driver for a misdemeanor violation and looked through the car window and observed a keg of whisky. Under these circumstances this court stated "It is not a search in any legal or colloquial sense for an officer to look into an automobile standing on the road side." A police officer has the right to investigate vehicles abandoned along public highways and in doing so is permitted to undertake a limited search for a certification of registration for the vehicle. Any articles or things observed in the course of such a search may be seized and used as evidence in a criminal proceeding. For that reason such a search is strictly limited to those areas of a vehicle where it would reasonably be expected that such a certification of registration might be found.

Appellant next contends that the vials were improperly admitted into evidence, alleging that they were the fruit of an illegal search. The focal point of appellant's argument is the consent given by him for the search. Appellant contends in this regard that the consent he gave was not free and voluntary and was therefore not a valid consent. With this contention we cannot agree. As a rule a consent will be valid except where it was procured by fraud, duress, fear, intimidation, or where it is a mere submission to the supremacy of the law. *Chandler* v. *State* (1949), 226 Ind. 648, 83 N. E. 2d 189; *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671; *Meno* v. *State* (1925), 197 Ind. 16, 164 N. E. 93. In the instant case there is absolutely no showing that the appellant was coerced into consenting to the search nor is there evident a mere submission to the supremacy of the law. As a matter of fact, appellant's own eloquent reply to the officer's request for permission to search the car, "Look the Son of a Bitch over", very clearly dispels this contention. Appellant further urges that because of his intoxicated state he could not have knowingly and intelligently given a valid and effective consent to the search. While this point has not been considered in this state authority elsewhere indicates

that an intoxicated person can consent to a search. In such cases, whether an accused was so intoxicated as to have lacked the mental capacity to form the intent to give a knowledgable and intelligent consent is question of fact to be determined by the trial judge. The court in *People* v. *Garcia* (1964), 227 C. A. 2d 345, 38 Cal. Rptr. 670, found that the facts that the defendant was under arrest and under the influence of narcotics when he gave consent to search his room did not make it mandatory as a matter of law, for the trial court to decide that the consent was involuntary. In *People* v. *Bracamonte* (1961), 194 C. A. 2d 167, 15 Cal. Rptr. 54, it was held that evidence was sufficient to support a finding that the defendant, who had been arrested on narcotics charge and was "high" at the time, consented to a search of his car, which contained stolen goods, when he handed the officer his car keys when asked for permission to search. Although the appellant was under some influence of drugs he still had an understanding of what was taking place and the trial court so found in overruling his motion to suppress.

Finally, appellant urges that the search of his coat was unlawful and therefore the evidence seized [three syringes and ten hypodermic needles] was inadmissible fruit and its admission into evidence was prejudicial error. In this contention we cannot agree. First, appellant had given prior consent to search the car and such consent had not been withdrawn, therefore the search of the coat taken from the rear floor of the car was permissible, as it was within the scope of the consent. Second, notwithstanding the consent there was sufficient probable cause to justify the search based on the cumulation of the following facts: Officer Oldham had found a bottle of unlabeled pills, he then observed the appellant in an intoxicated state, but could not smell the odor of alcohol on the appellant, he found the two unlabeled vials of liquid. Third, there was probable cause for the appellant's arrest for driving under the influence and certainly a search of the appellant's coat would have been permissible as

incident to such arrest. The fact that appellant took the coat off in an obvious attempt to discard the evidence is certainly relevant. For these reasons the search of the coat was lawful and the evidence seized was properly admitted into evidence.

Judgment of the trial court is affirmed.

All judges concur.

NOTE.—Reported in 227 N. E. 2d 617.