**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-4312
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RONALD LEE BARLOW

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(March 11, 1994)

Before WOOD,[*] SMITH, and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Ronald Barlow appeals the district court's denial of his motion to suppress evidence seized from his automobile abandoned during an armed robbery and his subsequent sentence, which was enhanced under the career armed offender statute, 18 U.S.C. § 924(e). Finding no error, we affirm.

_____

[*] Circuit Judge of the Seventh Circuit, sitting by designation.

On March 9, 1992, at around 8:30 p.m., a man held up a putt-putt golf course in Beaumont, Texas, taking about $230. As the robber left, the owner reached for a hidden gun and pursued the gunman, while yelling for another person to call the police. The bandit was heading in a southerly direction, but when he saw the owner chasing after him, he fired twice and turned and fled north.

A police officer soon arrived on the scene and followed the offender's path. He observed that further along the direction in which the suspect initially fled was a car parked at the end of a street, away from any businesses and pointed toward the freeway. Approaching the vehicle, the officer noticed that the car was unlocked, the engine was warm, and a single key was in the ignition.

The officer called in the license plate number and received a report that the woman listed as the official owner claimed no longer to own the car. At that point, the officer checked inside the car, attempting to find the identification of the owner. In the glove compartment he found a wallet and ID belonging to Barlow and .38 caliber bullets. The officer later testified that only at this point did he realize that the car probably was connected to the robbery.

After calling in Barlow's name and receiving his criminal history and a description, the officer resumed his pursuit, pausing only to interview a group of what he called hobos, from whom the brigand had stolen a blue shirt. They gave him a description

roughly consistent with the one given by the golf course owner.

The officer then stopped at a nearby convenience store, where he saw a man fitting the various descriptions he had received. The officer walked up to the man and asked whether he was Barlow. The suspect answered affirmatively, and the officer arrested him. A search of Barlow's clothes revealed a .38 caliber pistol loaded with three rounds of a five-round cylinder and $238 cash. The golf course owner then arrived at the store and identified Barlow as the robber.

## II.

Barlow was indicted for violating 18 U.S.C. § 922(g)(1), possessing a firearm with a previous felony conviction. He waived a jury trial and moved to suppress the evidence seized from the vehicle without a warrant. The district court denied the motion and after a bench trial found him guilty.

The government moved to enhance Barlow's sentence as a career armed offender under 18 U.S.C. § 924(e) for his three prior violent felonies. A presentence investigation report was prepared, indicating that Barlow had been convicted of three prior violent felonies, including a murder in 1965. Barlow objected to the use of the murder conviction because he was not admonished, when he pled guilty, that the state would seek the death penalty. He admitted that he did not object during the murder case and never raised an objection in direct or collateral appeal. The district court overruled Barlow's objection to the use of the prior murder

3

conviction for sentencing. Barlow was sentenced to three hundred months' imprisonment to be followed by five years' supervised release.

### III.

Barlow first contends that the district court erred in denying his motion to suppress the evidence seized from his car without a warrant. In reviewing a ruling on a motion to suppress evidence, we accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. United States v. Garcia, 849 F.2d 917, 917 n.1 (5th Cir. 1988). Nevertheless, we review conclusions of law de novo. United States v. Diaz, 977 F.2d 163, 164 (5th Cir. 1992).

### A.

Under Katz v. United States, 389 U.S. 347, 361 (1967), no warrantless search is lawful if the accused manifested a reasonable expectation of privacy in the object searched. One cannot, however, manifest a reasonable expectation of privacy in an item once it has been abandoned. Abel v. United States, 362 U.S. 217, 241 (1960); Hester v. United States, 265 U.S. 57 (1924); United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973) (en banc). The test for determining when an object has been abandoned is one of intent, which "may be inferred from words spoken, acts done, and other objective facts." Colbert, 474 F.2d at 176. The accused need not have abandoned the searched item in the strict property

4

sense, where an intent to relinquish ownership must be shown; merely an intent voluntarily to relinquish his privacy interest is sufficient.  See id.; David H. Steinberg, Note, Constructing Homes for the Homeless?  Searching for a Fourth Amendment Standard, 41 DUKE L.J. 1508, 1529-32 (1992).  A defendant has abandoned his reasonable expectation of privacy when he leaves an item in a public place.  California v. Greenwood, 486 U.S. 35, 40 (1988).

In United States v. Edwards, 441 F.2d 749, 751 (5th Cir. 1971), a defendant relinquished his privacy rights when, after a high-speed chase, he "abandoned his car . . . on a public highway, with engine running, keys in the ignition, lights on, and fled on foot."  The rationale for allowing such warrantless searches is that the automobile owner has no reasonable expectation of privacy in the car's vehicle identification number.  Id. (citations omitted).  Thus, a police officer may enter a vehicle on public property to ascertain its owner.  Kimbrough v. Beto, 412 F.2d 981 (5th Cir. 1969).  The officer may even enter a locked trunk as part of his inspection.  Edwards, 441 F.2d at 754.

Other cases support this view that an abandoned vehicle may be inspected.  In United States v. Williams, 569 F.2d 823, 826 (5th Cir. 1978), a defendant who had unhitched the trailer from his tractor and drove away could not complain of the warrantless search of his trailer left behind unlocked at a roadside rest area.  In United States v. Gulledge, 469 F.2d 713, 715 (5th Cir. 1972), the court upheld a warrantless search of a trailer more than ten days after it was left at a service station by men who asked to leave it

for two to three days.

In at least one case, however, we have reached the opposite conclusion. In United States v. Scrivner, 680 F.2d 1099, 1100 (5th Cir. 1982), the court vacated a conviction obtained based upon evidence seized from two trucks left unlocked and with the keys in the ignitions on warehouse premises owned by the trucks' owner. "Such an act is doubtless careless and imprudent, but it is scarcely sufficient to support a conclusion that he has cast the vehicles aside, relinquishing his interest in them." Id. at 1100-01.

The facts of this case more closely resemble those of Edwards than those of Scrivner. Barlow left his car parked at night at the end of a public street, away from public parking, behind a shopping center and near its back alley where only deliveries occur, unlocked, and with the key in the ignition. This case can be distinguished from Scrivner because the car was located at the end of a public road, not a private warehouse. Given these facts, it was reasonable to assume that the car had been abandoned, and the officer was justified in searching the car to identify its owner. Moreover, opening the glove compartment was a legitimate part of that inspection, less intrusive than opening the locked trunk in Edwards. See Edwards, 441 F.2d at 754. The fact that the defendant had fled from the vehicle (or abandoned his return to it) is irrelevant, as the police officer could not have known of that fact. And even if the officer had known that the car was linked to the robbery, "the motive of the police in obtaining evidence is

6

irrelevant because it is the reasonableness of the defendant's expectation [of privacy] that is to be assessed, not the conduct of the police." Steinberg, supra, at 1544. The only relevant facts in determining the reasonableness of Barlow's privacy expectation are the location of the vehicle, its condition, the time of night, and other factors that might have indicated an intent to relinquish ownership.

The only fact weighing against the conclusion that the vehicle had been abandoned was that it was still warm. Obviously the officer knew that the driver had just recently left the vehicle. Since the vehicle had been left unoccupied for only a short time, this indicates that the owner is more likely to return.[1] Nevertheless, a police officer who discovers an unlocked car left at the end of a public street with the key in the ignition could reasonable conclude that the car had been abandoned.[2]

B.

Having obtained the wallet and identification legally, and then realizing the connection to the robbery, the officer located Barlow at a convenience store, identified him from the various descriptions, arrested him, then searched him. Barlow contends that this search and seizure of his person also violated the Fourth

---

[1] The converse, that a vehicle left for a longer time is less likely to be reclaimed, is more obviously true.

[2] This court has even suggested that a vehicle search of this type may be upheld on exigency grounds. See, e.g., United States v. Gaultney, 581 F.2d 1137, 1143 n.4 (5th Cir. 1978) ("[A]bandonment of vehicles in public areas may . . . present sufficient exigency to dispense with a warrant."), cert. denied, 446 U.S. 907 (1980).

Amendment's prohibition against unreasonable warrantless searches and seizures.

Since the officer had already identified Barlow at this point, he had probable cause to arrest him.  Any search thereafter was therefore lawful as a search incident to a valid arrest.  See Chimel v. California, 395 U.S. 752 (1969).


IV.

Barlow also contends that one of his prior convictions used to trigger § 924(e) (career armed offender) suffered from a constitu-tional infirmity.  He contends that when he pled guilty to murder in 1965, the prosecutor induced his plea by promising that he would not seek the death penalty at sentencing.  The prosecutor then broke that promise and sought the death penalty.  Once the government establishes the fact of a prior conviction based upon a guilty plea, the defendant must prove the invalidity of the conviction by a preponderance of the evidence.  Parke v. Raley, 113 S. Ct. 517, 525 (1992).  The district court's decision is reviewed for clear error as to facts found.  See United States v. White, 890 F.2d 1033, 1035 (8th Cir. 1989).

The district court did not err by concluding that Barlow's evidence was insufficient.  Barlow's evidence consisted of a lack of waiver form, the lack of a transcript, and his testimony asserting that he had not received the admonishments.  While the record does not show that Barlow received warnings, no presumption of invalidity arises from his evidence.  The 1965 plea bargain

8

predated the Supreme Court's decision in <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), which set the contemporary standards for plea bargain admonishments.[3]  One court has held that <u>Boykin</u> does not apply retroactively in collateral attacks on previous convictions that have become final.  <u>See</u> <u>United States v. Wicks</u>, 995 F.2d 964, 977 (10th Cir.), <u>cert. denied</u>, 114 S. Ct. 482 (1993).  Regardless of whether <u>Boykin</u> applies retroactively, the Court has said that when a defendant collaterally challenges a pre-<u>Boykin</u> conviction, no presumption of invalidity attaches when the plea bargain record does not contain the <u>Boykin</u> admonishments.  <u>Parke</u>, 113 S. Ct. at 523.

Without the presumption of invalidity, Barlow's only evidence is his testimony.  The district court did not clearly err in finding it incredible.  Barlow was represented by counsel during his 1965 murder plea and had considerable experience with the criminal justice system.  His testimony at sentencing about another 1965 plea bargain was successfully impeached by the government, using documents Barlow had signed in 1965.  Finally, and most significantly, Barlow made no effort to attack his plea directly or collaterally for almost thirty years.  This case is the first time he has raised these arguments.  We adopt the view of the Tenth Circuit, refusing to dishonor a pre-<u>Boykin</u> conviction for enhancement purposes.  <u>Wicks</u>, 995 F.2d at 979.

AFFIRMED.

---

[3] The plea also predated the January 1, 1966, effectiveness date of T<small>EX.</small> C<small>ODE</small> C<small>RIM.</small> P. art. 26.16, which imposed various <u>Boykin</u>-like admonishment requirements.