1996 SD 59
**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Warren L. ANDERSON, Defendant and Appellant.**

**No. 19195.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1996.

Decided May 22, 1996.

Mark Barnett, Attorney General and Jennifer K. Trucano, Assistant Attorney General, Pierre, for plaintiff and appellee.

David J. Huss, Pennington County Public Defenders Office, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1] Warren L. Anderson (Anderson) appeals the trial court's denial of his motion to suppress evidence used in his conviction of possession of a controlled substance in violation of SDCL 22–42–2. We affirm.

## FACTS

[¶ 2] At 12:35 p.m. on November 5, 1994, Anderson was involved in a two-car accident in Rapid City, South Dakota. Anderson was driving a white Oldsmobile when the accident occurred. After the accident, but prior to the arrival of law enforcement officials, witnesses observed Anderson leaving the scene on foot and heading towards the Carmike Theaters, which is on a hill that overlooks the situs of the accident. Anderson left his car unlocked with the keys in the ignition.

[¶ 3] Rapid City Police Officers were dispatched to the scene. Upon arrival, they were informed of Anderson's untimely departure. An officer went over to the vehicle and looked inside without entering the vehicle. Another officer gathered information about Anderson and headed in the direction of the Carmike Theaters.

[¶ 4] In order to determine who owned the vehicle, Anderson's vehicle was entered (Search 1) to retrieve the vehicle registration and insurance. While searching for this information, a roach and roach clip were discovered in the glove compartment. Meanwhile, Anderson was apprehended and returned to the scene. Anderson was asked the following four questions: (1) Was Anderson the driver of the white Oldsmobile? (2) Was Anderson the owner of the white Oldsmobile? (3) Did Anderson own the roach and the roach clip? (4) Why had Anderson left the accident scene? Anderson affirmatively responded to questions one through three. Anderson's rationale for leaving the scene was that he was scared because he did not possess a driver's license or insurance for the car. Anderson was placed under arrest shortly after this conversation.

[¶ 5] A second search (Search 2) of the white Oldsmobile was conducted after Anderson's arrest. During Search 2, a zipped-up gym bag was found in the car's trunk. Inside the bag was a closed thermos. The thermos contained methamphetamine. Upon completion of this search, Anderson was transported to the Rapid City Jail.

[¶ 6] On November 10, 1994, Anderson was charged by a complaint with possession of a controlled substance with intent to distribute (SDCL 22–42–2), possession of a controlled substance (SDCL 22–42–5), possession of marijuana (SDCL 22–42–6), hit and run with property damage (SDCL 32–34–6), and driving while under revocation (SDCL 32–12–65). In addition, Anderson was issued traffic citations for left turn failure to yield and no insurance. On February 14, 1995, Anderson was arraigned on a two-part information. Part I alleged the five offenses contained in the complaint. Part II alleged Anderson was

a habitual offender, in violation of SDCL 22–7–7.[1]

[¶ 7] Anderson filed a number of pretrial motions, including a motion to suppress evidence obtained through Searches 1 and 2. A motion hearing was held March 22, 1995. The trial court denied Anderson's motion to suppress evidence in its entirety. Pursuant to a plea-bargain agreement, a stipulated court trial was held April 6, 1995. Anderson stipulated to the above-mentioned facts in exchange for State not pursuing four counts of the information. State only proceeded with the possession of a controlled substance charge[2] and the Part II habitual offender allegations (SDCL 22–7–7). The trial court found Anderson guilty of the offense of possession of a controlled substance. Anderson admitted that he was the same person named in the Part II habitual offender information. Due to this admission, the trial court found Anderson was a habitual offender and sentenced him to six years in the South Dakota Penitentiary. From this conviction, Anderson appeals the following issues:

I. Whether the trial court erred by characterizing the white Oldsmobile as an abandoned vehicle?

II. Did the trial court err by admitting evidence obtained in Search 1 of the white Oldsmobile?

III. Did probable cause exist after Search 1 to search the entire white Oldsmobile, including the trunk and closed containers?

## STANDARD OF REVIEW

[¶ 8] We review a trial court's denial of a motion to suppress under the abuse of discretion standard. *State v. Ramirez*, 535 N.W.2d 847, 848 (S.D.1995); *State v. Smith*, 477 N.W.2d 27, 31 (S.D.1991); *State v. Zachodni*, 466 N.W.2d 624, 630 (S.D.1991). The trial court's findings used to support a motion to suppress are reviewed under the clearly erroneous standard. *State v. Stetter*, 513 N.W.2d 87, 91 (S.D.1994); *State v. Corder*, 460 N.W.2d 733, 736 (S.D.1990).

[¶ 9] Whether or not probable cause exists to allow a search is a question of law, reviewable *de novo*. *State v. Krebs*, 504 N.W.2d 580, 585 (S.D.1993); *Smith*, 477 N.W.2d at 31; *Zachodni*, 466 N.W.2d at 630.

[¶ 10] **I. Whether the trial court erred by characterizing the white Oldsmobile as an abandoned vehicle.**

[¶ 11] Anderson admits he voluntarily left his vehicle after the accident with the doors unlocked and the keys in the ignition. The trial court found that Anderson abandoned his vehicle.[3] Therefore, the trial court upheld the initial search.

[¶ 12] Generally, under the Fourth Amendment to the United States Constitution and Article VI, § 11, of the South Dakota Constitution, searches of persons and places must be authorized by a warrant, based on probable cause that the search will yield evidence of a crime. *Zachodni*, 466 N.W.2d at 627. However, there are a number of recognized exceptions to this rule. *Id.* These exceptions allow for warrantless searches under certain circumstances. An example of this is found in our treatment of probable cause warrantless searches in automobiles. *Id.*

[¶ 13] We addressed the issue of abandoned property in *State v. Disbrow*, 266

---

1. SDCL 22–7–7 states:

When a defendant has been convicted of one or two prior felonies under the laws of this state or any other state or the United States, in addition to the principal felony, the sentence for the principal felony shall be enhanced by changing the class of the principal felony to the next class which is more severe.

2. SDCL 22–42–5 states:

No person may knowingly possess a controlled drug or substance unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner,

while acting in the course of his professional practice.... A violation of this section is a Class 5 felony.

3. Anderson's excuse for leaving the vehicle was that he wanted to attend a movie at the Carmike Theaters. The trial court stated: "Had the driver of the vehicle been going to a nearby business or residence to seek assistance or phone police or whatever, I think the lack of abandonment argument would have some merit.... It would appear from the locale involved, the time-frames involved, that an abandonment had taken place, and therefore, the motion to suppress is denied in its entirety."

N.W.2d 246, 250 (S.D.1978), wherein this court held that abandoned property (an apartment) was not subject to constitutional protections against unreasonable search and seizure. The issue whether a vehicle is abandoned is a question of first impression for this court. In *Krebs*, we listed the factors to consider in determining whether a legitimate expectation of privacy exists as a " 'legitimate presence in the area searched, possession or ownership of the area searched or the property seized, prior use of the area searched or the property seized, ability to control or exclude others' use of the property and a subjective expectation of privacy.' " 504 N.W.2d at 587 (quoting *United States v. Lochan*, 674 F.2d 960, 965 (1st Cir.1982); *United States v. Carter*, 854 F.2d 1102, 1105 (8th Cir.1988)). In addition, we stated that ownership of the property is not determinative of a legitimate expectation of privacy, but rather that it is just one factor to be considered. *Id.* These factors "are viewed under the totality of the circumstances." *Id.* While we have not applied this theory to vehicles, other courts have held that abandoned vehicles are not protected by the Fourth Amendment. *See United States v. Barlow*, 17 F.3d 85, 88 (5th Cir.1994); *United States v. Walton*, 538 F.2d 1348, 1354 (8th Cir.1976); *Cooper v. State*, 297 Ark. 478, 763 S.W.2d 645, 648 (1989).

[¶ 14] Two theories have been employed in rulings on the legality of the search of an abandoned vehicle. One theory is based on the ground that the defendant, by abandoning the vehicle, does not have standing to object to the search. *See State v. Achter*, 512 S.W.2d 894, 899 (Mo.App.1974). The second theory, which we find to be more persuasive, recognizes that a person does not have a justified expectation of privacy[4] in an abandoned vehicle. *Barlow*, 17 F.3d at 88; *Walton*, 538 F.2d at 1354; *Cooper*, 763 S.W.2d at 648; *State v. Wynn*, 623 So.2d 848, 849 (Fla.App.1993). This latter theory is analogous to our decision in *Disbrow*, 266 N.W.2d at 250 (abandoned apartment not subject to constitutional protections against search and seizure). Under this theory, the issue before us is: "Did Anderson have a reasonable expectation that the automobile would be free from governmental intrusion?"

[¶ 15] Other court decisions have answered this question. In *Muegel v. State*, 257 Ind. 146, 272 N.E.2d 617, 619 (1971), an officer saw a parked car alongside a highway. The officer looked in the glove compartment to discern who owned the vehicle and found drugs. Shortly thereafter, the defendant arrived with a tow truck and was arrested. The *Muegel* Court held that the officer's action "was not a 'search' within the constitutional proscription" because this was an abandoned car and the officer was pursuing a legitimate community caretaking function. *Id.* 272 N.E.2d at 620. In addition, the *Muegel* Court stressed that the defendant did not lose his expectation of privacy in all respects, for the officer's actions were "strictly limited to those areas of a vehicle where it would reasonably be expected that such a certification of registration might be found." *Id.*

[¶ 16] Next, in *Thom v. State*, 248 Ark. 180, 450 S.W.2d 550, 552 (1970), the court held the vehicle had been abandoned. The *Thom* court stated:

> Sometimes an automobile takes on the characteristics of a man's castle. Other times an automobile takes on the characteristics of an overcoat—that is, it is movable and can be discarded by the possessor at will. If [defendant] in his endeavors to avoid the clutches of the law had discarded his overcoat to make his flight more speedy, no one would think that an officer was unreasonably invading his privacy or security in picking up the overcoat and searching it thoroughly. In that situation most people would agree that the fleeing suspect had abandoned his coat as a matter of expediency as well as any rights relative to its search and seizure. What difference can there be when a fleeing [criminal] abandons his automobile to escape the clutches of the law? We can see no distinction and consequently hold that when property is abandoned officers in making a search thereof do not violate any rights or security of a citizen guaranteed under the Fourth Amendment.

*Id.* 450 S.W.2d at 552. Other decisions finding these searches constitutional based on

---

4. The justified expectation of privacy test was first recognized in *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576, 583 (1967).

abandonment are as follows: Barlow, 17 F.3d at 88 (police officer could search the vehicle on public property to ascertain its owner, legitimately opening both the glove compartment and a locked trunk as part of his inspection); *Walton*, 538 F.2d at 1354 (when defendant fled on foot, he abandoned the car); *People v. Washington*, 90 Ill.App.3d 631, 45 Ill.Dec. 837, 844, 413 N.E.2d 170, 177 (1980) (defendant abandoned car when he fled scene of burglary on foot and left the car on the street unlocked and with keys in ignition); *Henderson v. State*, 695 P.2d 879, 882 (Okla.Crim.App. 1985) (car abandoned when a defendant chased by police stopped car and escaped on foot); *Hudson v. State*, 642 S.W.2d 562, 565 (Tex.App.1982) (car abandoned when driver ran away upon being questioned by police).

[¶ 17] In order for us to determine whether Anderson had any justified expectation of privacy in his vehicle, we must examine all of the surrounding circumstances. Anderson's car was involved in an accident with another vehicle. When the police arrived at the scene of the accident it was reported to them that Anderson had been seen leaving the accident on foot. Further, when Anderson exited, his car was left at the scene with the keys in it. These facts lead to only one conclusion, Anderson abandoned his vehicle. Therefore, Anderson did not have any reasonable expectation of privacy in his vehicle, because his expectation in privacy moved with him up the hill.

**[¶ 18] II. Did the trial court err by admitting evidence obtained in Search 1 of the white Oldsmobile?**

[¶ 19] The trial court was correct in ruling the vehicle was abandoned, therefore, it was correct in denying the suppression of evidence obtained through Search 1.

**[¶ 20] III. Did probable cause exist after Search 1 to search the entire white Oldsmobile, including the trunk and closed container?**

[¶ 21] The trial court ruled that the officers had probable cause to search the trunk and the containers within the trunk. This decision was based on the fact that, since Search 1 was legal and the drug paraphernalia was admissible, probable cause existed to search the entire vehicle. Automobile searches are replete with exceptions. Due to an automobile's mobility and decreased privacy expectations, both the United States and the South Dakota Supreme Courts have held that "when a law enforcement officer stops a vehicle, and the officer has probable cause to believe the vehicle contains contraband, the vehicle may be searched without a warrant. The search may include the interior of the car as well as the trunk." *Zachodni*, 466 N.W.2d at 627 (citations omitted.) " 'The scope of a warrantless search of an automobile ... [is] defined by the object of the search and the places in which there is probable cause to believe that it may be found.' " *Id.* at 631 (quoting *United States v. Ross*, 456 U.S. 798, 823–24, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572, 593 (1982)).

[¶ 22] We also held in *State v. Burkman*, 281 N.W.2d 436, 440 (S.D.1979), that once drugs have been found in a car "it [is] reasonable to believe that there [are] other drugs in the car." Therefore, probable cause extends to justify search of the entire vehicle and the containers within where contraband could be hidden. *Ross*, 456 U.S. at 824, 102 S.Ct. at 2172, 72 L.Ed.2d at 592–93.

[¶ 23] The officer testified at the suppression hearing that his training and experience had shown that contraband could be hidden in a gym bag or the thermos. Although the question of probable cause is a question of law, reviewable de novo, the trial court must make a credibility determination when deciding whether or not to suppress evidence. *Krebs*, 504 N.W.2d at 585; *State v. Olsen* 462 N.W.2d 474, 479 (S.D.1990) (Wuest, J., concurring specially). The trial court found that the officer's testimony was credible. Anderson has failed to show that this finding was clearly erroneous.

[¶ 24] We affirm.

[¶ 25] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.